# EXHIBIT 5

Not Reported in F.Supp.2d, 2008 WL 3538717 (W.D.Tex.)
**(Cite as: 2008 WL 3538717 (W.D.Tex.))**

Only the Westlaw citation is currently available.

United States District Court,
W.D. Texas,
San Antonio Division.
UNITED STATES of America, Plaintiff,
v.
Cantrell BLEDSOE, Defendant.
**Criminal No. SA-08-CR-13(2)-XR.**

Aug. 8, 2008.

Mary Nelda Valadez, U.S. Attorney's Office, San Antonio, TX, for United States of America.

### ORDER

XAVIER RODRIGUEZ, District Judge.

**\*1** On this date, the Court considered Cantrell Bledsoe's Motion to Reargue a Motion to Dismiss the Superseding Indictment in Light of the Decision in *District of Columbia v. Heller,* --- U.S. ----, 128 S.Ct. 2783, ---L.Ed.2d ----, 2008 WL 2520816. The Government has charged the Defendant with violating 18 U.S.C. §§ 371 and 922(a)(6). The Defendant contends the indictment should be dismissed because: (1) as one legally permitted to purchase a firearm, she cannot be held liable for violating § 922(a)(6) under a "straw purchase" theory; (2) the statute she was charged under lacks a sufficient nexus to interstate commerce, and thus, violates the Commerce Clause, Article I, § 8, cl. 3 of the Constitution; (3) Congress lacked a rational basis to prohibit handgun purchases by a person over 18 years of age who has a Second Amendment right to bear arms; and (4) the minimum age discrepancies in § 922 violate the equal protection provision of the Fifth Amendment. For the reasons stated herein, the Defendant's motions (docket nos. 25, 32 and 60) are DENIED.

### Procedural History and Background

Defendant originally filed the Motion to Dismiss the Superseding Indictment on February 20, 2008 (docket no. 32). That motion was denied (docket no. 39) without prejudice to rearguing, should the recently decided Supreme Court case, *District of Columbia v. Heller,* announce a new rule conflicting with orders made by this Court. Subsequent to the Supreme Court's decision in *Heller,* the Defendant filed a Motion to Reargue the Motion to Dismiss the Superseding Indictment (docket no. 60) on June 27, 2008. In response to the Defendant's Motion to Reargue, the Government filed a brief (docket no. 63) in support of its position. The Court ordered the Government (docket no. 66) to clarify its position with regard to the proper standard of review to apply in performing an equal protection analysis to Defendant's age discrepancy challenge. Assuming that the correct standard would be intermediate scrutiny, the Court also asked the Government to explain how the age variance between the two laws at issue "substantially related" to the furtherance of an important governmental objective. The Government filed a brief in response to those two issues (docket no. 69), which the Court has considered.

The indictment in question charges the Defendant with conspiring to obtain a firearm [FN1] by making a false statement during a firearm purchase in violation of 18 U.S.C. §§ 371 and 922(a)(6). The Government alleges in the indictment that Defendant Bledsoe gave co-defendant Calvin Bouldin cash to purchase a 9 mm pistol. Bledsoe purportedly had Bouldin make this purchase on her behalf because Bledsoe was under 21 years of age and legally prohibited from making the purchase. The Government contends that Bledsoe selected the pistol she wished to purchase, and that Bouldin purchased that pistol from a federally licensed firearms dealer. During the purchase, the Government asserts that Bouldin falsely represented that he was the actual buyer. The Government further alleges that Bledsoe took

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 3538717 (W.D.Tex.)
**(Cite as: 2008 WL 3538717 (W.D.Tex.))**

possession of the pistol immediately thereafter from Bouldin, and that Bledsoe was the actual buyer.

> FN1. The firearm purchased was a Hi Point 9mm pistol, Model C9 (docket no. 34 at 3).

**Defendant's Motion to Reargue Motion to Dismiss Superseding Indictment in Light of Decision in *Heller***

***2** In Defendant's original Motion to Dismiss the Superseding Indictment, several objections were made. First, Defendant argued that the Second Amendment protects her right to purchase a firearm-and if such is the case, she cannot be charged under a "straw purchase" theory. Second, Defendant contended that the charging indictment violates the Commerce Clause of the Constitution, because it lacks a sufficient nexus to interstate commerce. Finally, Defendant argued that 18 U.S.C. § 922(a)(6) FN2 violates her Fifth Amendment equal protection rights to the extent that Congress failed to articulate a reason for why an individual can lawfully purchase a handgun from another individual FN3 at age eighteen, FN4 but that same person would be legally prohibited from purchasing a handgun from a federally licensed dealer until age twenty-one. FN5 Because the Defendant asserts that the decision in *Heller* has an impact on these objections, she asks this Court to examine the objections once more to determine whether she is entitled to relief.

> FN2. 18 U.S.C. § 922(a)(6) states: "(a) it shall be unlawful-(6) for any person in connection with the acquisition or attempted acquisition of any firearm or ammunition from a ... licensed dealer ... knowingly to make any false or fictitious oral or written statement or to furnish or exhibit any false, fictitious, or misrepresented identification, intended or likely to deceive such ... dealer ... with respect to any fact material to the lawfulness of the sale or other disposition of such firearm or ammunition under the provisions of this chapter ..."

> FN3. I.e., not a federally licensed dealer.

> FN4. 18 U.S.C. § 922(x) states, in relevant part: "(1) It shall be unlawful for a person to sell, deliver, or otherwise transfer to a person who the transferor knows or has reasonable cause to believe is a juvenile-(A) a handgun; or (B) ammunition that is suitable for use only in a handgun. (2) It shall be unlawful for any person who is a juvenile to knowingly possess-(A) a handgun; or (B) ammunition that is suitable for use only in a handgun." Further, in Section (x)(5), the statute reads: "For purposes of this subsection, the term 'juvenile' means a person who is less than 18 years of age." The practical application of these statutes in the present case is to criminalize a handgun transaction between individuals where the buyer is younger than 18 years old, and further, to prohibit juveniles under 18 years of age from possessing a handgun.

> FN5. 18 U.S.C. § 922(b)(1) states: "It shall be unlawful for any ... licensed dealer ... to sell or deliver-(1) any firearm or ammunition to any individual who the licensee knows or has reasonable cause to believe is less than eighteen years of age, and, if the firearm, or ammunition is other than a shotgun or rifle, or ammunition for a shotgun or rifle, to any individual who the licensee knows or has reasonable cause to believe is less than twenty-one years of age."

Because the Court finds that *Heller* has rendered Defendant's Commerce Clause argument moot, that objection will not be analyzed here. *See Heller,* 2008 WL 2520817 at *28 ("Nothing in [*Heller*] should be taken to cast doubt on ... laws imposing conditions and qualifications on the commercial sale of arms."). It is, however, necessary to analyze

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 3538717 (W.D.Tex.)
**(Cite as: 2008 WL 3538717 (W.D.Tex.))**

the Defendant's Second Amendment challenge. Finally, because it appears that Defendant's objection on the grounds of a "straw purchase" theory is, in reality, only a derivative of her more encompassing Equal Protection Clause objections, only the latter will be discussed.

### I. Second Amendment Analysis and Impact of *Heller*

Defendant argues that because *Heller* upholds the right to bear arms as an enumerated right, it imposes strict scrutiny analysis on statutes regulating Second Amendment rights.

### A. Impact of *Heller* on Second Amendment-Overview

The issue decided in *Heller* was "whether a District of Columbia prohibition on the possession of usable handguns in the home violate[d] the Second Amendment to the Constitution." *Heller,* 2008 WL 2520817 at *3. The Supreme Court affirmed the D.C. Circuit decision to strike the prohibition. *Id.* at *33. The principal holding of *Heller* is that the Second Amendment protects an individual's right to possess and bear arms, irrespective of maintaining a militia, in one's home for the purpose of self-defense. *Id.* More specifically, the Supreme Court held that a law proscribing handgun possession in the home is unconstitutional. *Id.*

The government, in response to Defendant's Motion to Reargue filed July 9, 2008 (docket no. 63), correctly notes that while the Supreme Court affirmed an individual's right to posses a handgun, that Court did not rule on all the modern nuances and regulations restricting the Second Amendment right. Furthermore, the Supreme Court did not provide the appropriate standard of review for judging whether a government regulation of firearms violates the Second Amendment. *Id.* at *29. The Supreme Court majority did, however, affirm that the right to posses a handgun is limited and subject to various regulations restricting the right. ("Like most rights, the right secured by the Second Amendment is not unlimited." *Id.* at *28).

**\*3** The Supreme Court majority explicitly stated that the opinion in *Heller* was not to be viewed as an exhaustive and conclusive decision concerning the many statutes regulating the Second Amendment right to bear arms. *Id.* The Court noted that there are many "presumptively lawful regulatory measures" of the Second Amendment right, such as "prohibitions of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms." *Id.* While the Supreme Court notes that these areas all fall within the regulatory powers of Congress, the Court also admits the "list does not purport to be exhaustive," implying that there are other areas in which Congress could be within its power in regulating. *Id.* at fn. 26. The Supreme Court majority also responded to criticism from the dissent for leaving out "justification for those regulations of the right we describe as permissible," by noting that *Heller* represents the Court's first in-depth analysis of the Second Amendment, and as such, should not be expected to cast light on the entirety of that area of law. *Id.* at *32.

### B. Degree of Scrutiny Required for Second Amendment Analysis

In asserting that *Heller* imposes strict scrutiny analysis on statutes regulating firearms possession, the Defendant misinterprets the law. The Supreme Court majority in *Heller* expressly "declin[ed] to establish a level of scrutiny for evaluating Second Amendment restrictions," leaving that question to be settled later. *Id.* at *32. While the Supreme Court does make brief mention of strict scrutiny analysis in conjunction with the Second Amendment, the Court's discussion has nothing to do with laws *restricting* the rights protected under the Second Amendment. *See Id.* at *29. Rather, the Court's discussion concerns *proscriptions* of consti-

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

tutional rights, not *restrictions,* as Defendant would argue. The statutes used to indict Defendant in no way proscribe gun possession generally among all people. Those statutes, instead, regulate the age and manner in which an individual may purchase certain types of firearms. The Supreme Court suggests that § 922 does not fall within the same class of statutes proscribing gun possession, such as the statute in question in *Heller. Id.* "Few laws in the history of our nation have come close to the severe restriction of the District's handgun ban." *Id.*

Given that the Supreme Court declined to set a standard for which to evaluate Second Amendment regulations, this Court finds unwarranted Defendant's assertion that strict scrutiny, the most exacting form of scrutiny available, be used to evaluate the statutes in question in this case. Furthermore, the Fifth Circuit has held that it would be inappropriate to analyze certain provisions of § 922 with strict scrutiny. *See United States v. Darrington,* 351 F.3d 632, 635 (With regards to an equal protection challenge to § 922(g)(1), the Fifth Circuit held, "Nor do we read *Emerson* as holding that ... any governmental restrictions on [the right to bear arms] must meet a constitutional strict scrutiny test, as Darrington argues."). Until the Supreme Court indicates otherwise, this Court will apply a lower form of scrutiny to laws that merely regulate, as opposed to proscribe, handgun possession. Moreover, as this Court found previously, the federal laws challenged by Defendant meet rational basis scrutiny (*See* docket no. 39).

**\*4** Between the highly deferential standards of a rational basis analysis and the exacting standards of strict scrutiny, however, lies intermediate scrutiny. "To withstand intermediate scrutiny, a statutory classification must be substantially related to an important governmental objective." *Clark v. Jeter,* 486 U.S. 456, 461, 108 S.Ct. 1910, 100 L.Ed.2d 465 (1988). Furthermore, the statutory classification should reflect "a reasoned judgment consistent with the ideal of equal protection by inquiring whether it may be fairly viewed as furthering a substantial interest of the state." *Plyler v. Doe,* 457 U.S. 202, 217-18, 102 S.Ct. 2382, 72 L.Ed.2d 786 (1982). This Court finds that the public safety concerns discussed in the Court's previous order constitute important governmental objectives and, furthermore, that the statutes challenged by Defendant are substantially related to addressing those ends.

U.S.C. § 922(x) permits an individual who is 18 years old to purchase a handgun from an individual seller, while § 922(a)(6) prohibits an individual under 21 years of age from buying a handgun from a federally licensed firearms dealer. As this Court previously discussed, the likely reason Congress passed the statute was to reduce handgun use in the commission of crimes in the United States. (*See* docket no. 39, fn. 6). To assert, as Defendant's contentions suggest, that regulations governing the sale of handguns for the 18-20 year-old age group do not further a substantial governmental interest is meritless, given the statistics suggesting that the vast majority of guns confiscated from 18-20 year old criminal defendants are handguns. (*See* docket no. 39, fn. 6). Therefore, this Court finds that on a direct challenge to § 922(a) (6), the statutory provision meets intermediate scrutiny analysis. Accordingly, Defendant's objection and motion to dismiss on its direct challenge to § 922(a)(6) is denied.

**II. Equal Protection Analysis**

The Defendant also objects to the age discrepancies found between §§ 922(a)(6) and 922(x)(1). The practical effect of § 922(a)(6) is to criminalize "false statements that are intended to deceive federal firearms dealers with respect to facts material to the 'lawfulness of the sale' of firearms." *U.S. v. Polk,* 118 F.3d 286, 295 (5th Cir.1997). According to the Fifth Circuit, "if the true purchaser can lawfully purchase a firearm directly, § 922(a) (6) liability ... does not attach." *Id.* Herein lies the Defendant's argument. Defendant cites to §§ 922(x)(1)(A) and 922(x)(5) to make the observation that, being 19 years old at the time of the handgun purchase, she could have lawfully purchased a handgun from

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 3538717 (W.D.Tex.)
**(Cite as: 2008 WL 3538717 (W.D.Tex.))**

anyone who was not a federally licensed firearms dealer. Therefore, the Defendant raises the objection that the minimum age discrepancies in 18 U.S.C. § 922 for purchasing handguns violate her Fifth Amendment equal protection rights.

### A. Conspiracy to Violate the Law and Its Relation to Constitutionality

This Court does not address Defendant's objections to the indictment on the grounds of equal protection at the outset because it finds that the principal issue in this case relates to the distinction between conspiring to violate the law and actually violating the law. The indictment used by the Government to charge the Defendant in this case is based on 18 U.S.C. § 371-conspiring to commit an offense or to defraud the United States.[FN6] The Defendant argues here that the Government is not within its power in charging her with conspiring to violate a statute that is unconstitutional because that statute violates the equal protection guarantees of the Fifth Amendment. This Court, however, finds that the Government is correct in asserting that the constitutionality of an underlying statute is not relevant in determining whether the Defendant is guilty of conspiring to break the law. See *Bryson v. United States,* 396 U.S. 64, 67-68, 90 S.Ct. 355, 24 L.Ed.2d 264 (1969).

> FN6. 18 U.S.C. § 371 reads: "If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined under this title or imprisoned not more than five years, or both.
>
> "If, however, the offense, the commission of which is the object of the conspiracy, is a misdemeanor only, the punishment for such conspiracy shall not exceed the maximum punishment provided for such misdemeanor."

**\*5** In *Bryson,* the Supreme Court upheld a man's criminal conviction for conspiring to violate a statute "that simply made it a crime for one who was or had recently been a Communist Party member to be a union officer." *Bryson,* 396 U.S. at 66. Even though Bryson was convicted of conspiracy, his appeal to the Supreme Court was not heard until nearly ten years after his conviction. *Id.* at 65. The reason for the delay in the appeal was that the statute Bryson conspired to violate was ruled unconstitutional after his conviction, and Bryson sought relief from his conviction on those grounds. See *United States v. Brown,* 381 U.S. 437, 85 S.Ct. 1707, 14 L.Ed.2d 484 (1965). Thus, even when a statute is later held to be unconstitutional by the Supreme Court, it is still a chargeable offense for a person to knowingly and willfully have conspired to violate it. *Id.*

*Bryson* lends support to this Court's decision inasmuch as none of the statutes presently in dispute have ever been held to be unconstitutional by the Supreme Court, the Fifth Circuit, the Western District of Texas, or any other court. To the contrary, the constitutionality of various provisions of § 922 have been questioned numerous times, and each time, courts have found them to be constitutional. *See e.g., United States v. Lewitzke,* 176 F.3d 1022 (7th Cir.1999) (prohibition on possession of firearms by individual convicted of misdemeanor domestic violence did not violate equal protection); *United States v. Dickey,* 102 F.3d 157 (5th Cir.1996) (Congress has authority under commerce clause to pass a felon-in-possession statute); *United States v. King,* 532 F.2d 505 (5th Cir.1976) (upheld conviction of individual involved in conspiring to deal firearms without a license, notwithstanding Second Amendment right to keep and bear arms). Because there are no provisions of § 922 that have been ruled unconstitutional, this Court finds that the Government's position is strengthened by *Bryson,* to the extent that the Supreme Court refused to overturn a conviction based on conspiring to violate

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 3538717 (W.D.Tex.)
**(Cite as: 2008 WL 3538717 (W.D.Tex.))**

a statute that was later found to be unconstitutional. This logic is further supported by *Dennis v. United States,* 384 U.S. 855, 866, 86 S.Ct. 1840, 16 L.Ed.2d 973 (1966). There, the Supreme Court found:

> It is no defense to a charge based upon this sort of enterprise that the statutory scheme sought to be evaded is somehow defective. Ample opportunities exist in this country to seek and obtain judicial protection. There is no reason for this Court to consider the constitutionality of a statute at the behest of petitioners who have been indicted for conspiracy by means of falsehood and deceit to circumvent the law which they now seek to challenge.

*Id.* The Court went on to hold:
> The governing principle is that a claim of unconstitutionality will not be heard to excuse a voluntary, deliberate and calculated course of fraud and deceit. One who elects such a course as a means of self-help may not escape the consequences by urging that his conduct be excused because the statute which he sought to evade is unconstitutional. This is a prosecution directed at petitioners' fraud. It is not an action to enforce the statute claimed to be unconstitutional.

**\*6** *Id.* at 867.

The facts of this case are similar to those found in *Bryson* and *Dennis.* Here, just as in those cases, it is alleged the Defendant knowingly and willfully entered into a conspiracy to circumvent a statutory regulation imposed by Congress to keep federally licensed firearms dealers from selling or otherwise distributing handguns to those under 21 years of age. The Court need not provide the Defendant retroactive protection of the law on constitutional grounds if she knowingly and willfully conspired to violate that law. For this reason, Defendant's motion to dismiss the superseding indictment is denied. However, the Defendant does bring up some interesting issues concerning equal protection, which deserve further explanation.

**B. Equal Protection as it Pertains to Discrepancies in Section 922**

"The Equal Protection Clause of the Fourteenth Amendment commands that no state 'shall deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Center,* 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985) (quoting *Plyler v. Doe,* 457 U.S. 202, 216, 102 S.Ct. 2382, 72 L.Ed.2d 786 (1982)). While the Fifth Amendment itself does not contain equal protection language, it is well settled that equal protection analysis is identical under the Fifth and Fourteenth Amendments. *See e.g., Bolling v. Sharpe,* 347 U.S. 497, 498-99, 74 S.Ct. 693, 98 L.Ed. 884 (1954); *Buckley v. Valeo,* 421 U.S. 1, 93, 95 S.Ct. 1381, 43 L.Ed.2d 682 (1976); *Weinberger v. Wiesenfeld,* 420 U.S. 636, 638, 95 S.Ct. 1225, 43 L.Ed.2d 514 (1975). Thus, an individual may bring an equal protection challenge to a federal statute under the Fifth Amendment, and be accorded the same analysis and protections guaranteed to individuals challenging the constitutionality of a state statute under the Fourteenth Amendment. In challenging the constitutionality of a federal statute on equal protection grounds, it is important to note that Congress is presumably within its powers when it passes legislation, which when challenged, is evaluated by the court under the highly deferential lens of rational basis review. *See United States v. Carolene Products,* 304 U.S. 144, fn. 4, 58 S.Ct. 778, 82 L.Ed. 1234 (1938). That proposition holds true "unless a classification warrants some form of heightened review because it jeopardizes exercise of a fundamental right or categorizes on the basis of an inherently suspect characteristic." *Nordlinger v. Hahn,* 505 U.S. 1, 10, 112 S.Ct. 2326, 120 L.Ed.2d 1 (1992). Here, the Defendant's objection rests on the contention that the age discrepancies between §§ 922(a)(6) and 922(x)(1) treat similarly situated individuals differently, thus violating her equal protection rights under the Fifth Amendment.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 3538717 (W.D.Tex.)
**(Cite as: 2008 WL 3538717 (W.D.Tex.))**

This Court notes that while both §§ 922(a)(6) and 922(x) would pass either a rational basis or intermediate scrutiny analysis when analyzed in isolation, equal protection questions arise when the provisions are compared. The way these statutes interact, it appears as though the law would rather an 18 to 20 year old purchase a handgun from an unlicensed seller than from a licensed seller. This appears problematic for multiple reasons. Presumably, the licensed seller has greater resources to research a handgun buyer's personal and criminal background in order to more accurately assure that the handgun will not be used for illegal purposes. Given that the government has exacting regulatory control over a federally licensed firearms dealer, but has little control over the manner in which individual firearms sellers perform their transactions, these age discrepancies do seem troubling. Unfortunately, the legislative history concerning this matter is not very useful in resolving this dilemma, leaving unanswered why Congress chose to create such age discrepancies.

**\*7** Nevertheless, the Court need not further address the potential equal protection problems between the two statutory provisions because the Defendant is not being charged with a direct violation of the law. Instead, the Defendant is charged with conspiring to violate a statute, and for the reasons already stated herein, such charge is distinguishable from one for a direct violation of the statute.[FN7]

> FN7. To elaborate, despite the compelling equal protection challenge concerning the manner in which the two provisions of § 922 affect similarly situated persons between the ages of 18 and 20, this case involves a conspiracy to violate a law, not a direct challenge to the law itself.

### Conclusion

Accordingly, Defendant's Motion to Dismiss the Superseding Indictment (docket nos. 25, 32 and 60) is hereby **DENIED.**

It is so ORDERED.

W.D.Tex.,2008.
U.S. v. Bledsoe
Not Reported in F.Supp.2d, 2008 WL 3538717 (W.D.Tex.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

334 Fed.Appx. 711, 2009 WL 3377940 (C.A.5 (Tex.))
**(Not Selected for publication in the Federal Reporter)**
**(Cite as: 334 Fed.Appx. 711, 2009 WL 3377940 (C.A.5 (Tex.)))**

This case was not selected for publication in the Federal Reporter.

Not for Publication in West's Federal Reporter See Fed. Rule of Appellate Procedure 32.1 generally governing citation of judicial decisions issued on or after Jan. 1, 2007.   See also Fifth Circuit Rules 28.7, 47.5.3, 47.5.4.  (Find CTA5 Rule 28 and Find CTA5 Rule 47)

United States Court of Appeals,
Fifth Circuit.
UNITED STATES of America, Plaintiff-Appellee
v.
Cantrell BLEDSOE, Defendant-Appellant.
**No. 08-51217.**

Oct. 20, 2009.

Joseph H. Gay, Jr., Assistant U.S. Attorney, U.S. Attorney's Office, Western District of Texas, San Antonio, TX, for Plaintiff-Appellee.

John Michael Economidy, San Antonio, TX, for Defendant-Appellant.

Appeal from the United States District Court for the Western District of Texas, USDC No. 5:08-CR-13-2.

Before REAVLEY, JOLLY, and WIENER, Circuit Judges.

PER CURIAM: FN*

> FN* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

**1 Defendant-Appellant Cantrell Bledsoe appeals her conviction after pleading guilty to one count of conspiring to make knowing, false, material representations to a federally-licensed gun dealer, in violation of 18 U.S.C. § 371, and § 922(a)(6). For the reasons set forth below, we AFFIRM.

Bledsoe admits to paying a third party to purchase her a handgun from a federally-licensed seller. That third party falsely stated that he was the "actual buyer" of the weapon, thus violating § 922(a)(6). Bledsoe further admits to conspiring with this third party to make these false statements, thus violating § 371.

Bledsoe, who was nineteen at the time of the purchase, argues that the proscription in § 922(b)(1) on the sale of handguns by federally-licensed dealers to people under twenty-one violates her Second Amendment individual right to keep and bear arms, as recently recognized in *District of Columbia v. Heller,* 555 U.S. ----, 128 S.Ct. 2783, 2822, 171 L.Ed.2d 637 (2008). Bledsoe further argues that the overall age scheme in § 922 violates the equal protection component of the Due Process Clause of the Fifth Amendment.

We do not need to reach the substance of Bledsoe's arguments. Bledsoe is not being charged with violating § 922(b)(1), but of conspiring to make a false material statement in the purchase of a firearm, which she admitted doing. The Supreme Court has stated that "a claim of unconstitutionality will not be heard to excuse a voluntary, deliberate and calculated course of fraud and deceit. One who elects such a course as a means of self-help may not escape the consequences by urging that [her] conduct be excused because the statute which [s]he sought to evade is unconstitutional." *Dennis v. United States,* 384 U.S. 855, 867, 86 S.Ct. 1840, 1847, 16 L.Ed.2d 973 (1966). Indeed, even assuming the Government could not constitutionally prohibit Bledsoe from purchasing a firearm, "it cannot be thought that as a general principle of our law a citizen has a privilege to answer fraudulently a ques-

334 Fed.Appx. 711, 2009 WL 3377940 (C.A.5 (Tex.))
**(Not Selected for publication in the Federal Reporter)**
**(Cite as: 334 Fed.Appx. 711, 2009 WL 3377940 (C.A.5 (Tex.)))**

tion that the Government should not have asked." *Bryson v. United States,* 396 U.S. 64, 72, 90 S.Ct. 355, 360, 24 L.Ed.2d 264 (1969). "Our legal system provides methods for challenging the Government's right ***712** to ask questions-lying is not one of them." *Id.* (footnote omitted).

AFFIRMED.

C.A.5 (Tex.),2009.
U.S. v. Bledsoe
334 Fed.Appx. 711, 2009 WL 3377940 (C.A.5 (Tex.))

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.