# EXHIBIT 7

Not Reported in F.Supp.2d, 2008 WL 744718 (W.D.Tex.)
**(Cite as: 2008 WL 744718 (W.D.Tex.))**

Only the Westlaw citation is currently available.

United States District Court,
W.D. Texas,
San Antonio Division.
UNITED STATES of America,
v.
Cantrell BLEDSOE, Defendant.
**Criminal No. SA-08-CR-13(2)-XR.**

March 20, 2008.

Mary Nelda Valadez, U.S. Attorney's Office, San Antonio, TX, for Plaintiff.

### ORDER

XAVIER RODRIGUEZ, District Judge.

**\*1** On this date, the Court considered Defendant Cantrell Bledsoe's Motion to Dismiss the Superseding Indictment, filed February 20, 2008. Defendant is charged in this indictment with conspiring to obtain a firearm by making a false statement during the firearm purchase in violation of 18 U.S.C. §§ 371 and 922(a)(6).[FN1] The Government alleges in the indictment that Bledsoe gave co-defendant Calvin Bouldin cash to purchase a 9 mm pistol. The Government alleges that Bledsoe had Bouldin make this purchase on her behalf because Bledsoe was under 21 years of age and legally prohibited from making the purchase.[FN2] The Government alleges that Bledsoe selected the pistol she wanted purchased, and that Bouldin purchased that pistol from a federally licensed firearm dealer. During the purchase, the Government alleges that Bouldin falsely represented that he was the actual buyer. The Government further alleges that Bledsoe took possession of the pistol immediately thereafter from Bouldin, and that Bledsoe was the actual buyer.

FN1. Section 922(a)(6) states, in part, that "it shall be unlawful ... (6) for any person in connection with the acquisition or attempted acquisition of any firearm or ammunition from a licensed importer, licensed manufacturer, licensed dealer, or licensed collector, knowingly to make any false or fictitious oral or written statement or to furnish or exhibit any false, fictitious, or misrepresented identification, intended or likely to deceive such importer, manufacturer, dealer, or collector with respect to any fact material to the lawfulness of the sale or other disposition of such firearm or ammunition under the provisions of this chapter;...."

FN2. Bledsoe was 19 years old at the time the firearm was purchased.

### Defendant's Motion to Dismiss the Superseding Indictment

Defendant raises the following objections[FN3]: First, she is entitled under the Second Amendment to purchase a firearm. If she is constitutionally permitted to purchase a firearm, there can be no "straw man liability" under section 922(a)(6). *See e. g., District of Columbia v. Heller,* 478 F.3d 370 (D.C.Cir.2007), *cert. granted,* --- U.S. ----, 128 S.Ct. 645, 169 L.Ed.2d 417 (2007).

FN3. Although not an objection, Defendant proffers that she needs a handgun because her mother and sister have been shot in drive-by shootings, a friend was murdered, and the police are unable to protect her.

Secondly, Defendant argues that the indictment violates the Commerce Clause, Article I, § 8, cl. 3 of the Constitution. Specifically, Defendant argues that section 922(a)(6) fails to require a nexus to interstate commerce. *See e.g. U.S. v. Lopez,* 514 U.S. 549, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995).

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 744718 (W.D.Tex.)
**(Cite as: 2008 WL 744718 (W.D.Tex.))**

She also argues that Congress lacked a rational basis to prohibit firearm purchases by a person over 18 years of age who has a Second Amendment right to bear arms.

Lastly, Defendant argues that the indictment violates the equal protection component of the Fifth Amendment's due process clause. Defendant argues that 18 U.S.C. § 922(b)(1) FN4 prohibits a firearms dealer from selling a handgun to a person under 21 years of age; however, 18 U.S.C. § 922(x) FN5 allows a person other than a dealer to sell a handgun to a person over 18 years of age. Further, Defendant argues that because a person under 21 years of age can vote, enlist in the armed forces, and potentially receive the death penalty, the restriction on a 19-year old from purchasing a weapon lacks a rational basis.

> FN4. Section 922(b)(1) states: "It shall be unlawful for any licensed importer, licensed manufacturer, licensed dealer, or licensed collector to sell or deliver-(1) any firearm or ammunition to any individual who the licensee knows or has reasonable cause to believe is less than eighteen years of age, and, if the firearm, or ammunition is other than a shotgun or rifle, or ammunition for a shotgun or rifle, to any individual who the licensee knows or has reasonable cause to believe is less than twenty-one years of age...."

> FN5. Section (x)(1) states: "It shall be unlawful for a person to sell, deliver, or otherwise transfer to a person who the transferor knows or has reasonable cause to believe is a juvenile-
>
> (A) a handgun; or
>
> (B) ammunition that is suitable for use only in a handgun.
>
> (2) It shall be unlawful for any person who is a juvenile to knowingly possess-
>
> (A) a handgun; or
>
> (B) ammunition that is suitable for use only in a handgun."

**Analysis**

**Straw Purchases Generally**

In *U.S. v. Polk,* 118 F.3d 286 (5th Cir.1997), the Fifth Circuit affirmed that "the plain language of the statute compels the conclusion that § 922(a)(6) criminalizes false statements that are intended to deceive federal firearms dealers with respect to facts material to the 'lawfulness of the sale' of firearms." *Id* at 295. The Court then went on to state "if the true purchaser can lawfully purchase a firearm directly, § 922(a)(6) liability (under a "straw purchase" theory) does not attach." *Id.* However, the Court also affirmed that the "purpose of § 922(a)(6) was 'to make it possible to keep firearms out of the hands of those not legally entitled to possess them because of age, criminal background, or incompetency.' " *Id.* (*citing Barrett v. U.S.,* 423 U.S. 212, 220, 96 S.Ct. 498, 46 L.Ed.2d 450 (1976)).

\*2 Relying upon *Polk,* Defendant argues that she is constitutionally entitled to purchase a firearm. Accordingly, if she can lawfully purchase the handgun, liability under a straw purchase theory should not attach. For the reasons stated below, this Court rejects her theory.

**Second Amendment**

The Supreme Court has recently heard oral argument in *Heller.* It will likely be months before a decision is announced. As of the date of this Order, the prevailing law is that 18 U.S.C. § 922(a) (6) is not in conflict with "the right to keep and bear arms" guaranteed by the Second Amendment to the United States Constitution. *See U.S. v. Graves,* 554 F.2d 65 (3d Cir.1977); *Cody v. U.S.,* 460 F.2d 34 (8th Cir.1972).

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 744718 (W.D.Tex.)
**(Cite as: 2008 WL 744718 (W.D.Tex.))**

Defendant relies upon the Fifth Circuit's decision in *U.S. v. Emerson,* 270 F.3d 203 (5th Cir.2001). Although the Fifth Circuit concluded that the Second Amendment does protect individual rights, the Court went on to state "that does not mean that those rights may never be made subject to any limited, narrowly tailored specific exceptions or restrictions for particular cases that are reasonable and not inconsistent with the right of Americans generally to individually keep and bear their private arms as historically understood in this country. Indeed, Emerson does not contend, and the district court did not hold, otherwise. As we have previously noted, it is clear that felons, infants and those of unsound mind may be prohibited from possessing firearms." *Id.* at 261. Accordingly, the Fifth Circuit has not held that section 922(a)(6) is unconstitutional. *See also U.S. v. Darrington,* 351 F.3d 632 (5th Cir.2003) (Section 922(g)(1) does not violate the Second Amendment).

Defendant's objection and motion to dismiss on this ground is denied, without prejudice to rearguing should *Heller* announce a new rule.

**Commerce clause and nexus requirement**

Challenges under the commerce clause have likewise so far been without success. *See Huddleston v. U.S.,* 415 U.S. 814, 833, 94 S.Ct. 1262, 39 L.Ed.2d 782 (1974) ("Finally, no interstate commerce nexus need be demonstrated. Congress intended, and properly so, that §§ 922(a)(6) and (d) (1), in contrast to 18 U.S.C.App. § 1202(a)(1), *see U.S. v. Bass, supra,* were to reach transactions that are wholly intrastate, as the Court of Appeals correctly reasoned, 'on the theory that such transactions affect interstate commerce.' ") (citations omitted).

Defendant suggests by citing *Lopez,* but offers no citation, that *Huddleston* may no longer be good law. It appears that other circuits that have addressed other subsections of 922 have rejected such a claim. *See U.S. v. Meienberg,* 263 F.3d 1177, 1182 (10th Cir.2001) ("Section 922(b)(2), like the statutes under consideration in *Huddleston,* applies to wholly intrastate firearm transactions as well as interstate firearms transactions. In considering Congress' constitutional power to regulate intrastate transactions, the aggregate interstate affect [sic] of the regulated intrastate transactions is considered. Well-documented congressional findings indicate that the market for firearms is a national market. Under these circumstances, the aggregate of intrastate firearms transactions has a substantial affect [sic] on interstate commerce. *U.S. v. Cardoza,* 129 F.3d 6, 13 (1st Cir.1997) ("[T]he supply and demand for handguns in any given state will 'substantially affect' interstate commerce in handguns by causing the weapons to move across state lines."). Because firearms transactions, even those which are purely intrastate, substantially affect interstate commerce in firearms, § 922(b)(2) is a valid exercise of Congress' power to regulate interstate commerce.") (some citations omitted); *U.S. v. Jay,* 108 F.3d 1377 (6th Cir.1997) (Table) ("Jay next asks this court, relying on *U.S. v. Lopez,* 514 U.S. 549, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995), to recognize that 18 U.S.C. § 922(g)(1) constitutes an improper exercise of power under the Commerce Clause, and to reverse the district court's denial of his motion to dismiss count one of the indictment. This issue has been previously addressed by this court in *U.S. v. Turner,* 77 F.3d 887, 889 (6th Cir.1996), when we held section 922(g)(1) to be constitutional. *Accord U.S. v. Murphy,* 96 F.3d 846, 848 (1996). Consequently, the district court correctly denied Jay's motion to dismiss count one of the indictment."); *U.S. v. Smith,* 97 F.3d 1453 (6th Cir.1996) (Table); *see also, U.S. v. Polk,* 118 F.3d 286 (5th Cir.1997) ( § 922(o)(1) constitutional); *U.S. v. Darrington,* 351 F.3d 632 (5th Cir.2003) (rejecting argument that section 922(g)(1) exceeds congressional power to regulate interstate commerce because the statute does not require a "substantial" effect on interstate commerce).

**\*3** Defendant's objection and motion to dismiss on this ground is denied, without prejudice to rearguing should *Heller* announce a new rule.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

**Lack of Rational Basis Argument and Equal Protection Argument**

The firearm regulatory scheme at issue here is consonant with the concept of equal protection embodied in the Due Process Clause of the Fifth Amendment if there is "some 'rational basis' for the statutory distinctions made ... or ... they 'have some relevance to the purpose for which the classification is made.' " *Lewis v. U.S.,* 445 U.S. 55, 65, 100 S.Ct. 915, 63 L.Ed.2d 198 (1980).

A rational basis review, unlike strict scrutiny, is highly deferential to Congress's judgment in enacting a particular statute. To survive rational basis review, a statute need only be rationally related to a legitimate governmental interest. *U.S. v. Baker,* 197 F.3d 211, 216 (6th Cir.1999).

Courts have rejected rational basis challenges to various firearm prohibitions. *See U.S. v. One (1) Vyatskie Polyany Mach. Bldg. Plant Molot VEPR Rifle,* 473 F.Supp.2d 374 (E.D.N.Y.2007) (rational basis present barring firearm ownership by former mental institution inmate and rejecting equal protection rights claim); *U .S. v. Baker,* 197 F.3d 211, 216 (6th Cir.1999) ( " § 922(g)(8) is rationally related to the government's legitimate interest in curtailing the incidence of domestic violence. The statute reflects Congress's determination that persons subject to domestic violence protection orders pose an increased threat to the safety of their intimate partners and children. Congress concluded that keeping firearms away from such individuals represents a reasonable step toward reducing domestic violence."); *Tinsley v. U.S.,* 172 F.3d 49 (6th Cir.1998) (Table) ("convicted felons are not a protected class and there is a rational basis for legislation that restricts their access to firearms").

This Court has been unable to find any case squarely on point regarding this particular challenge. Here, Congress has decided to require that those holding federal licenses sell handguns only to persons at least 21 years of age. Ostensibly, those holding federal licenses sell many handguns. Congress has decided to allow non-licensees (ostensibly persons who are not in the business of selling multiple handguns) to sell handguns to a person who is over 18 years of age. Further, Congress has decided to allow license holders to sell hunting weaponry (rifles and shotguns) to 18 year olds, but restrict the licensed sale of handguns to 21 year olds. The theory likely is that handguns are more likely to be used in the commission of a crime.[FN6] *See e.g., Young v. Hawaii,* 2008 WL 659783 (D.Hawai'i 2008) ("We believe that requiring a person to obtain a permit under HRS § 134-2 [mandating that permit holder must be at least 21 years of age] prior to acquiring a firearm is rationally related to the legitimate government interest of ensuring that only those who are mature, law abiding, competent citizens possess firearms.").

> [FN6]. Defendant rejects this argument citing to a **1968** Congressional Report that "30% of all murders by firearms involve rifles or shotguns and that one out of four murdered policemen are killed by rifles and shotguns." But see Gun Crime in the Age Group 18-20, a report by the Department of the Treasury and the Department of Justice (June 1999) ("18 to 20 year olds comprised 22 percent of all those arrested for murder." "Handguns (including semi-automatic pistols) comprised 85 percent of the crime guns known to be recovered from 18 to 20 year olds in 27 cities...." "Handguns comprised 85 percent of the crime guns known to be recovered from 18 to 20 year olds in the 27 cities.").

***4** In addition, the Court notes that much more burdensome age-related legislation has passed constitutional muster. *See e.g ., Gary v. City of Warner Robins, Ga.,* 311 F.3d 1334, 1339 (11th Cir.2002) ("The effect of the ordinance is to prohibit all persons under the age of twenty-one from entering establishments that primarily serve alcohol for consumption on the premises, but do not serve a specified quantity of food. Ostensibly, the City enacted

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

the ordinance to curb underage drinking. The City apparently believed that the risk of underage drinking would be greater in establishments that primarily serve alcohol than in establishments that primarily serve food. Thus, the City structured the ordinance to concentrate on establishments that primarily serve alcohol. We find that the rational relationship between the City's purpose and the means adopted is 'at least debatable.' Accordingly, the ordinance does not violate the Equal Protection Clause.").

"Rational basis review does not permit courts to pass judgment on the effectiveness of the legislature's proposed classifications." *Gun Owners' Action League, Inc. v. Swift,* 284 F.3d 198, 214 (1st Cir.2002). Legislators may enact complex compromises when addressing novel social and economic issues, and "it is for the legislature, not the courts, to balance the advantages and disadvantages of the new requirement." *Id.* (*citing Williamson v. Lee Optical Inc.,* 348 U.S. 483, 487, 75 S.Ct. 461, 99 L.Ed. 563 (1955)). "A statutory classification that neither proceeds along suspect lines nor infringes fundamental constitutional rights must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *F.C.C. v. Beach Communications, Inc.,* 508 U.S. 307, 313, 113 S.Ct. 2096, 124 L.Ed.2d 211 (1993). There exists a rational basis for the congressional action. Accordingly, Defendant's objection and motion to dismiss on this ground is denied, without prejudice to rearguing should *Heller* announce a new rule.

Defendant's motions to dismiss indictments (docket nos. 25 and 32) are DENIED.

W.D.Tex.,2008.
U.S. v. Bledsoe
Not Reported in F.Supp.2d, 2008 WL 744718 (W.D.Tex.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.