# EXHIBIT
# 3

--- F.Supp.2d ----, 2010 WL 5137137 (S.D.Cal.)
**(Cite as: 2010 WL 5137137 (S.D.Cal.))**

**H**
Only the Westlaw citation is currently available.

United States District Court,
S.D. California.
Edward PERUTA, Michelle Laxson, James Dodd, Dr. Leslie Buncher, Mark Cleary, and California Rifle and Pistol Association Foundation, Plaintiffs,
v.
COUNTY OF SAN DIEGO, William Gore, individually and in his capacity as sheriff, Defendants.

No. 09CV2371-IEG (BGS).
Dec. 10, 2010.

**Background:** Residents of California county who applied for license to carry concealed weapon (CCW) or renewal and was denied for "good cause" or told they would be ill-advised to apply due to lack of "good cause," and association dedicated to educating the public about firearms and protecting rights thereto, brought § 1983 action against county sheriff, individually and in his official capacity, seeking declaratory and injunctive relief from his policies for obtaining CCW license. concealed weapon. Parties cross-moved for summary judgment.

**Holdings:** The District Court, Irma E. Gonzalez, Chief Judge, held that:

(1) under intermediate scrutiny, sheriff's policy of requiring applicant for CCW license to demonstrate "good cause" for its issuance did not violate Second Amendment right to bear arms;

(2) "good cause" requirement id not violate Fourteenth Amendment equal protection, nor did alleged preferential treatment of Honorary Deputy Sheriffs Association (HDSA) members or residency requirement;

(3) residency requirement did not violate right to travel guaranteed by Privileges and Immunities Clause and due process; and

(4) because applicants did not have property or liberty interest in CCW license, sheriff was not required to provide them with due process before denying their initial license application.

Plaintiffs' motion denied; defendant's motion granted.

West Headnotes

**[1] Weapons 406 ⬡107(2)**

406 Weapons
   406I In General
      406k102 Constitutional, Statutory, and Regulatory Provisions
         406k107 Construction
            406k107(2) k. Right to Bear Arms in General. Most Cited Cases

--- F.Supp.2d ----, 2010 WL 5137137 (S.D.Cal.)
**(Cite as: 2010 WL 5137137 (S.D.Cal.))**

**Weapons 406 ⚷107(5)**

406 Weapons
    406I In General
        406k102 Constitutional, Statutory, and Regulatory Provisions
            406k107 Construction
                406k107(5) k. Right as Individual or Collective; Militia Requirement. Most Cited Cases

Second Amendment protects the individual right to keep and bear arms for self-defense. U.S.C.A. Const.Amend. 2.

**[2] Constitutional Law 92 ⚷3852**

92 Constitutional Law
    92XXVII Due Process
        92XXVII(A) In General
            92k3848 Relationship to Other Constitutional Provisions; Incorporation
                92k3852 k. Second Amendment. Most Cited Cases

Due Process Clause of the Fourteenth Amendment incorporates the Second Amendment individual right to keep and bear arms for self-defense. U.S.C.A. Const.Amends. 2, 14.

**[3] Weapons 406 ⚷106(3)**

406 Weapons
    406I In General
        406k102 Constitutional, Statutory, and Regulatory Provisions
            406k106 Validity
                406k106(3) k. Violation of Right to Bear Arms. Most Cited Cases

California statute which generally restricts the open carry of loaded firearms in public does not place unlawful burden on right to carry firearm for self-defense; statute contains several exceptions, including specific exceptions for self-defense and defense of the home. West's Ann.Cal.Penal Code § 12031.

**[4] Constitutional Law 92 ⚷1053**

92 Constitutional Law
    92VII Constitutional Rights in General
        92VII(A) In General
            92k1053 k. Strict or Heightened Scrutiny; Compelling Interest. Most Cited Cases
Fundamental constitutional rights are not invariably subject to strict scrutiny.

**[5] Constitutional Law 92 ⚷1054**

92 Constitutional Law
    92VII Constitutional Rights in General
        92VII(A) In General
            92k1054 k. Intermediate Scrutiny. Most Cited Cases

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.Supp.2d ----, 2010 WL 5137137 (S.D.Cal.)
**(Cite as: 2010 WL 5137137 (S.D.Cal.))**

    In contrast with strict scrutiny, intermediate scrutiny, by definition, allows government to paint with a broader brush.

**[6] Weapons 406 ⚬106(3)**

406 Weapons
   406I In General
      406k102 Constitutional, Statutory, and Regulatory Provisions
         406k106 Validity
            406k106(3) k. Violation of Right to Bear Arms. Most Cited Cases

    Under intermediate scrutiny, Second Amendment right to bear arms was not violated by California county sheriff's policy of requiring applicant for license to carry concealed weapon to demonstrate "good cause" for its issuance, defined as set of circumstances that distinguished applicant from other members of the general public and caused him or her to be placed in harm's way, more than generalized fear for one's personal safety, and backed by supporting documentation; government had important and substantial interest in public safety and in reducing rate of gun use in crime, particularly in reducing number of concealed weapons in public in order to reduce risks to other members of public who used streets and went to public accommodations. U.S.C.A. Const.Amend. 2; West's Ann.Cal.Penal Code § 12050(a)(1)(A).

**[7] Constitutional Law 92 ⚬3053**

92 Constitutional Law
   92XXVI Equal Protection
      92XXVI(A) In General
         92XXVI(A)6 Levels of Scrutiny
            92k3052 Rational Basis Standard; Reasonableness
               92k3053 k. In General. Most Cited Cases

**Constitutional Law 92 ⚬3062**

92 Constitutional Law
   92XXVI Equal Protection
      92XXVI(A) In General
         92XXVI(A)6 Levels of Scrutiny
            92k3059 Heightened Levels of Scrutiny
               92k3062 k. Strict Scrutiny and Compelling Interest in General. Most Cited Cases

    When government's action does not involve suspect classification or implicate fundamental right, even intentional discrimination will survive constitutional scrutiny for an equal protection violation as long as it bears a rational relation to a legitimate state interest; however, where fundamental rights and liberties are asserted under Equal Protection Clause, classifications which might invade or restrain them must be closely scrutinized. U.S.C.A. Const.Amend. 14.

**[8] Constitutional Law 92 ⚬3478**

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.Supp.2d ----, 2010 WL 5137137 (S.D.Cal.)
**(Cite as: 2010 WL 5137137 (S.D.Cal.))**

92 Constitutional Law
   92XXVI Equal Protection
     92XXVI(E) Particular Issues and Applications
       92XXVI(E)1 In General
         92k3478 k. Right to Possess and Use Firearms. Most Cited Cases

**Weapons 406 ⚷106(4)**

406 Weapons
   406I In General
     406k102 Constitutional, Statutory, and Regulatory Provisions
       406k106 Validity
         406k106(4) k. Violation of Other Rights or Provisions. Most Cited Cases
     Equal protection was not violated by California county sheriff's policy of requiring applicant for license to carry concealed weapon to demonstrate "good cause" for its issuance, defined as set of circumstances that distinguished applicant from other members of the general public and caused him or her to be placed in harm's way, more than generalized fear for one's personal safety, and backed by supporting documentation; policy did not treat similarly situated individuals differently because not all law-abiding citizens were similarly situated. U.S.C.A. Const.Amend. 14; West's Ann.Cal.Penal Code § 12050(a)(1)(A).

**[9] Constitutional Law 92 ⚷3478**

92 Constitutional Law
   92XXVI Equal Protection
     92XXVI(E) Particular Issues and Applications
       92XXVI(E)1 In General
         92k3478 k. Right to Possess and Use Firearms. Most Cited Cases
   Concealed weapons licensing program administered so as to unjustly discriminate between persons in similar circumstances may deny equal protection. U.S.C.A. Const.Amend. 14.

**[10] Constitutional Law 92 ⚷3478**

92 Constitutional Law
   92XXVI Equal Protection
     92XXVI(E) Particular Issues and Applications
       92XXVI(E)1 In General
         92k3478 k. Right to Possess and Use Firearms. Most Cited Cases

**Weapons 406 ⚷106(4)**

406 Weapons
   406I In General
     406k102 Constitutional, Statutory, and Regulatory Provisions
       406k106 Validity
         406k106(4) k. Violation of Other Rights or Provisions. Most Cited Cases
   Requirement that applicant for license to carry a concealed weapon (CCW) in California

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.Supp.2d ----, 2010 WL 5137137 (S.D.Cal.)
**(Cite as: 2010 WL 5137137 (S.D.Cal.))**

be a resident or spend substantial time in county in which they apply does not violate equal protection. U.S.C.A. Const.Amend. 14; West's Ann.Cal.Penal Code § 12050(a)(1)(A).

**[11] Constitutional Law 92 ⇔2950**

92 Constitutional Law
    92XXIV Privileges or Immunities; Emoluments
        92XXIV(C) Privileges and Immunities of Citizens of the Several States (Article   )
            92XXIV(C)2 Particular Issues and Applications
            92k2950 k. In General. Most Cited Cases
"Right to travel" usually considered to be one of the rights guaranteed by the Privileges and Immunities Clause of Article IV and Privileges and Immunities Clause of the Fourteenth Amendment, embraces at least three different components: (1) the right of a citizen of one State to enter and to leave another State, (2) the right to be treated as a welcome visitor rather than an unfriendly alien when temporarily present in the second State, and (3) for those travelers who elect to become permanent residents, the right to be treated like other citizens of that State. U.S.C.A. Const.Art. 4, § 2; U.S.C.A. Const.Amend. 14, § 1.

**[12] Constitutional Law 92 ⇔1280**

92 Constitutional Law
    92XII Freedom of Travel and Movement
        92k1280 k. In General. Most Cited Cases
State law implicates constitutional right to travel when it actually deters such travel, when impeding travel is its primary objective, or when it uses any classification which serves to penalize the exercise of that right. U.S.C.A. Const.Art. 4, § 2; U.S.C.A. Const.Amend. 14, § 1.

**[13] Constitutional Law 92 ⇔1281**

92 Constitutional Law
    92XII Freedom of Travel and Movement
        92k1281 k. Compelling Interest Test. Most Cited Cases
Law embracing means that are substantially related to a substantial government interest will survive constitutional right to travel analysis. U.S.C.A. Const.Art. 4, § 2; U.S.C.A. Const.Amend. 14, § 1.

**[14] Constitutional Law 92 ⇔1282**

92 Constitutional Law
    92XII Freedom of Travel and Movement
        92k1282 k. Residency Requirements. Most Cited Cases

**Weapons 406 ⇔106(4)**

406 Weapons
    406I In General
        406k102 Constitutional, Statutory, and Regulatory Provisions

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.Supp.2d ----, 2010 WL 5137137 (S.D.Cal.)
**(Cite as: 2010 WL 5137137 (S.D.Cal.))**

        406k106 Validity
            406k106(4) k. Violation of Other Rights or Provisions. Most Cited Cases
     Requirement that applicant for license to carry a concealed weapon (CCW) in California be a resident or spend substantial time in county in which they apply does not violate right to travel. U.S.C.A. Const.Art. 4, § 2; U.S.C.A. Const.Amend. 14, § 1; West's Ann.Cal.Penal Code § 12050(a)(1)(A).

**[15] Constitutional Law 92 ⟐⟐3873**

92 Constitutional Law
    92XXVII Due Process
        92XXVII(B) Protections Provided and Deprivations Prohibited in General
            92k3868 Rights, Interests, Benefits, or Privileges Involved in General
                92k3873 k. Liberties and Liberty Interests. Most Cited Cases

**Constitutional Law 92 ⟐⟐3874(1)**

92 Constitutional Law
    92XXVII Due Process
        92XXVII(B) Protections Provided and Deprivations Prohibited in General
            92k3868 Rights, Interests, Benefits, or Privileges Involved in General
            92k3874 Property Rights and Interests
                92k3874(1) k. In General. Most Cited Cases
     Threshold requirement for asserting a due process claim is the existence of a property or liberty interest. U.S.C.A. Const.Amend. 14.

**[16] Constitutional Law 92 ⟐⟐4298**

92 Constitutional Law
    92XXVII Due Process
        92XXVII(G) Particular Issues and Applications
            92XXVII(G)12 Trade or Business
            92k4266 Particular Subjects and Regulations
                92k4298 k. Weapons and Firearms. Most Cited Cases

**Weapons 406 ⟐⟐134**

406 Weapons
    406III Registration, Licenses, or Permits of Owners and Purchasers
        406k134 k. Permits to Carry Guns. Most Cited Cases
     Because California applicants for license to carry concealed weapon (CCW) did not have property or liberty interest in that license, sheriff was not required to provide them with due process before denying their initial license application. U.S.C.A. Const.Amend. 14; West's Ann.Cal.Penal Code § 12050(a)(1)(A).

Carl D. Michel, Michel & Associates PC, Long Beach, CA, Paul H. Neuharth, Jr., Law Offices of Paul H. Neuharth, San Diego, CA, for Plaintiffs.

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.Supp.2d ----, 2010 WL 5137137 (S.D.Cal.)
**(Cite as: 2010 WL 5137137 (S.D.Cal.))**

James M. Chapin, San Diego, CA, Neil R. O'Hanlon, Hogan Lovells US LLP, Los Angeles, CA, John C. Eastman, Orange, CA, for Defendants.

**ORDER:**
**(1) DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT, and**
**(2) GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

IRMA E. GONZALEZ, Chief Judge.

**\*1** This is an action brought pursuant to 42 U.S.C. § 1983 in which Plaintiffs seek injunctive and declaratory relief from Defendant's policies for obtaining a license to carry a concealed weapon pursuant to California Penal Code § 12050. At the heart of the parties' dispute is whether the right recognized by the Supreme Court's rulings in *District of Columbia v. Heller,* 554 U.S. 570, 128 S.Ct. 2783, 171 L.Ed.2d 637 (2008) and *McDonald v. City of Chicago,* --- U.S. ----, 130 S.Ct. 3020, 177 L.Ed.2d 894 (2010)-the right to possess handguns in the home for self-defense-extends to the right asserted here: the right to carry a loaded handgun in public, either openly or in a concealed manner. The matter is presently before the Court is a motion for partial summary judgment brought by Plaintiffs and a motion for summary judgment brought by Defendant William Gore. For the reasons set forth below, the Court **DENIES** Plaintiff's motion for partial summary judgment and **GRANTS** Defendant's motion for summary judgment.

## BACKGROUND

*The Plaintiffs*

Each individual Plaintiff is a resident of San Diego County. Pls .' Statement of Undisputed Facts ("SUF") at 6. None of the Plaintiffs is disqualified under federal or California law from purchasing or possessing firearms. *Id.* Each individual Plaintiff applied to the San Diego Sheriff's Department for a license to carry a concealed weapon ("CCW") or a renewal, and each was denied for lack of "good cause" or told by the Sheriff's Department that he or she would be ill-advised to apply due to lack of "good cause." [FN1] *Id.* at 7. In addition to being denied due to lack of "good cause," Plaintiff Edward Peruta alleges he was denied a CCW license based on his residency. *See* Pls.' Consolidated SUF ¶ 15. Defendant maintains the residency requirement was not a factor in the denial. *Id.* Plaintiff California Rifle and Pistol Association Foundation ("CRPAF") is an organization dedicated to educating the public about firearms and protecting the rights thereto. *See* Pls.' SUF at 6.

*Concealed Carry Licensing Scheme*

California Penal Code sections 12050-12054 set forth the criteria that applicants for CCW licenses must meet: Applicants must be of good moral character, be a resident of or spend substantial time in the County in which they apply, demonstrate good cause and take a firearms course. In San Diego County, all license applications go to Defendant Sheriff William Gore are handled by his authorized representatives. *See* Def.'s SUF ¶ 1. The "good cause" provision of Penal Code section 12050 is at issue in this case.

Defendant defines "good cause" under Penal Code section 12050 as a set of circumstances that distinguishes the applicant from other members of the general public and causes him or her to be placed in harm's way. *See* Def.'s SUF ¶ 5. Generalized fear for one's personal safety

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.Supp.2d ----, 2010 WL 5137137 (S.D.Cal.)
**(Cite as: 2010 WL 5137137 (S.D.Cal.))**

is not, standing alone, considered "good cause." *Id.* To demonstrate "good cause," new applicants must provide supporting documentation. *See* Pls.' SUF ¶ 9.

**\*2** License holders may renew licenses up to 30 days prior to the expiration date. Def.'s SUF ¶ 8. Renewals are issued on the spot absent any negative law enforcement contacts, crime cases, arrests, etc. *See id.* Applicants still need to provide some form of documentation to support a continued need but not to the extent of the initial application. *Id.* Plaintiffs maintain that Plaintiff Cleary was required to produce documentation for his renewal, but that the County granted several renewal applications of Honorary Deputy Sheriffs' Association ("HDSA") members without requiring supporting documentation. Pls.' Consolidated SUF ¶ 10.

Defendant defines residency under Penal Code section 12050 to include any person who maintains a permanent residence in the County or spends more than six months of the taxable year within the County if the individual claims dual residency. *See id.* ¶ 16. Part-time residents who spend less than six months in the County are considered on a case-by-case basis and CCW licenses have been issued to part-time residents. *Id.*

*Procedural Background*

Plaintiff Edward Peruta filed his original complaint on October 23, 2009, asserting that Penal Code section 12050 violated the right to bear arms under the Second Amendment, the right to equal protection under the Fourteenth Amendment, and the right to travel under the Fourteenth Amendment. (Doc. No. 1.) Defendant moved to dismiss Plaintiff's complaint on November 13, 2009. (Doc. No. 3.) The Court denied Defendant's motion to dismiss on January 14, 2010, and Defendant filed an answer soon thereafter. (Doc. Nos.7, 8.) On April 22, 2010, Plaintiff filed a motion for leave to file a First Amended Complaint to add additional Plaintiffs and claims. (Doc. No. 16.) The Court granted Plaintiffs' motion on June 25, 2010, and Defendant filed an answer to Plaintiffs' First Amended Complaint on July 9, 2010. (Doc. Nos.24, 28.)

Presently before the Court is a motion for summary judgment by Defendant and a motion for partial summary judgment by Plaintiffs. (Doc. Nos.34, 38.) Defendant has moved for summary judgment on all claims, whereas Plaintiffs have moved for summary judgment only on the right to bear arms and certain equal protection claims. For purposes of their motions, and with the Court's approval, the parties adopted (and later modified) a stipulated briefing schedule and completed briefing by November 10, 2010. The Court held oral argument on the parties' motions on November 15, 2010. (Doc. No. 60 .)

### *LEGAL STANDARD*

Summary judgment is proper where the pleadings and materials demonstrate "there is no genuine issue as to any material fact and ... the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c)(2); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A material issue of fact is a question a trier of fact must answer to determine the rights of the parties under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.Supp.2d ----, 2010 WL 5137137 (S.D.Cal.)
**(Cite as: 2010 WL 5137137 (S.D.Cal.))**

**\*3** The moving party bears "the initial responsibility of informing the district court of the basis for its motion." *Celotex,* 477 U.S. at 323. To satisfy this burden, the movant must demonstrate that no genuine issue of material fact exists for trial. *Id.* at 322. Where the moving party does not have the ultimate burden of persuasion at trial, it may carry its initial burden of production in one of two ways: "The moving party may produce evidence negating an essential element of the nonmoving party's case, or, after suitable discovery, the moving party may show that the nonmoving party does not have enough evidence of an essential element of its claim or defense to carry its ultimate burden of persuasion at trial ." *Nissan Fire & Marine Ins. Co., v. Fritz Cos.,* 210 F.3d 1099, 1106 (9th Cir.2000). To withstand a motion for summary judgment, the non-movant must then show that there are genuine factual issues which can only be resolved by the trier of fact. *Reese v. Jefferson Sch. Dist. No. 14J,* 208 F.3d 736, 738 (9th Cir.2000). The non-moving party may not rely on the pleadings alone, but must present specific facts creating a genuine issue of material fact through affidavits, depositions, or answers to interrogatories. Fed.R.Civ.P. 56(e); *Celotex,* 477 U.S. at 324.

The court must review the record as a whole and draw all reasonable inferences in favor of the non-moving party. *Hernandez v. Spacelabs Med. Inc.,* 343 F.3d 1107, 1112 (9th Cir.2003). However, unsupported conjecture or conclusory statements are insufficient to defeat summary judgment. *Id.; Surrell v. Cal. Water Serv. Co.,* 518 F.3d 1097, 1103 (9th Cir.2008). Moreover, the court is not required " 'to scour the record in search of a genuine issue of triable fact,' " *Keenan v. Allan,* 91 F.3d 1275, 1279 (9th Cir.1996) (citations omitted), but rather "may limit its review to the documents submitted for purposes of summary judgment and those parts of the record specifically referenced therein." *Carmen v. San Francisco Unified Sch. Dist.,* 237 F.3d 1026, 1030 (9th Cir.2001).

### *DISCUSSION*

## I. Right to Bear Arms

### A. The Scope of the Right: *Heller and McDonald*

[1][2] The Second Amendment provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." In *District of Columbia v. Heller,* 554 U.S. 570, 128 S.Ct. 2783, 2799, 171 L.Ed.2d 637 (2008), the Supreme Court recognized that the Second Amendment protects the individual right to keep and bear arms for self-defense. Two years later in *McDonald v. City of Chicago,* --- U.S. ----, ----, ----, 130 S.Ct. 3020, 3026, 3044, 177 L.Ed.2d 894 (2010), the Court evaluated restrictions "similar to the District of Columbia's" in *Heller* and held that the Due Process Clause of the Fourteenth Amendment "incorporates the Second Amendment right recognized in *Heller."*

The *Heller* Court focused on two restrictions, both of which are relevant to the right asserted in this case: (1) a ban on handgun possession in the home, which the Court characterized as among the most restrictive in the "history of our Nation," and (2) the requirement that firearms be kept inoperable at all times. 128 S.Ct. at 2817-18. The Court's analysis of these restrictions is important because it provides guidance on the scope of the Second Amendment right in terms of both "place" and "manner."

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.Supp.2d ----, 2010 WL 5137137 (S.D.Cal.)

**(Cite as: 2010 WL 5137137 (S.D.Cal.))**

**\*4** *Place.* After evaluating the prefatory and operative clauses of the amendment, the Court turned to the District of Columbia's total ban on handgun possession in the home. 128 S.Ct. at 2817. In doing so, the Court singled out the home as a place "where the need for defense of self, family, and property is most acute." *Id.* Likewise, while declining to expound fully on the scope of the Second Amendment, the Court observed that "whatever else it leaves to future evaluation, it surely elevates above all other interests the right of law-abiding, responsible citizens to use arms in defense of hearth and home." *Id.* at 2821. Accordingly, the Court held that "the District's ban on handgun possession in the home violates the Second Amendment." *Id.*

*Manner.* The *Heller* Court also addressed the District's requirement that firearms in the home be rendered and kept inoperable at all times, and without exception.FN2 *Id.* at 2818. The Court held that the District's restriction "makes it impossible for citizens to use [firearms] for the core lawful purpose of self-defense and is hence unconstitutional." *Id.* In dicta, the *Heller* Court explained that the Second Amendment right is "not unlimited" and not a "right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." 128 S.Ct. at 2816 (citations omitted). For example, the Court noted that:

the majority of the 19th-century courts to consider the question held that prohibitions on carrying concealed weapons were lawful under the Second Amendment or state analogues. Although we do not undertake an exhaustive historical analysis today of the full scope of the Second Amendment, nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms.

*Id.* at 2816-17 (internal citations omitted). In a footnote immediately following, the Court explained: "We identify these presumptively lawful regulatory measures only as examples; our list does not purport to be exhaustive." *Id.* at 2817 n. 26.

The Court's recitation of lawful regulatory measures does not provide a blueprint for the validity of future restrictions; it should be interpreted as "precautionary language" that "warns readers not to treat *Heller* as containing broader holdings than the Court set out to establish: that the Second Amendment creates individual rights, one of which is keeping operable handguns at home for self-defense." *United States v. Skoien,* 614 F.3d 638, 640 (7th Cir.2010) (en banc) (Easterbrook, J.).

**B. Plaintiffs' Challenge in the Context of California's Statutory Framework**

Plaintiffs maintain that the right recognized in *Heller* includes a right to carry a loaded handgun in public, either openly or in a concealed manner. *See generally* Pls.' Mem. In accordance with such a right, Plaintiffs maintain that under California law, there is a single outlet for carrying a handgun for self-defense: concealed carry with a license pursuant Penal Code section 12050. *See id.* at 1-2. Because Penal Code section 12050 allows sheriffs to grant concealed carry licenses, Plaintiffs argue that Defendant's policy-under which an assertion of self-defense is insufficient to demonstrate "good cause"-is unconstitutional both on its face and as applied. *See generally id.*

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.Supp.2d ----, 2010 WL 5137137 (S.D.Cal.)
**(Cite as: 2010 WL 5137137 (S.D.Cal.))**

**\*5** Defendant disputes each aspect of Plaintiffs' position and argues against extending *Heller* beyond its express holding. *See generally* Def.'s Mem. According to Defendant, the right recognized in *Heller* does not extend beyond the home, and the right to self-defense does not entail the right to loaded carry in the absence of an immediate threat. *Id.* Accordingly, Defendant argues that concealed carry pursuant to Penal Code section 12050 is not the sole outlet for carrying a handgun for self-defense. Defendant highlights other California provisions that permit unloaded open carry and loaded open carry if the individual is in immediate grave danger.FN3 *Id.* In light of the foregoing, and based on the Supreme Court's approval of cases upholding concealed weapons bans, Defendant maintains that the restrictions at issue here are "presumptively lawful." *See id.* at 9.

[3] Before turning to the burden imposed by Defendant's policy, the Court evaluates Plaintiffs' contention that, under California's statutory framework, concealed carry with a license pursuant Penal Code section 12050 contains the sole outlet for carrying a handgun for self-defense. *See* Pls.' Mem. at 1-2. Plaintiff's contention is based on the assumption that Penal Code section 12031 unlawfully burdens the right to self-defense.FN4

California Penal Code section 12031 generally restricts the open carry of loaded firearms in public. The statute contains several exceptions, however, including specific exceptions for self-defense and defense of the home.FN5 *See* Cal.Penal Code §§ 12031(j) (1)-(3). Section 12031(j)(1) permits loaded open carry by "a person who reasonably believes that the person or property of himself or herself or of another is in immediate, grave danger and that the carrying of the weapon is necessary for the preservation of that person or property." The term immediate refers to the "brief interval before and after the local law enforcement agency, when reasonably possible, has been notified of the danger and before the arrival of its assistance." *Id.* Section 12031(j)(2) permits loaded open carry by a person who "reasonably believes that he or she is in grave danger because of circumstances forming the basis of a current restraining order issued by a court against another person or persons who has or have been found to pose a threat to his or her life or safety." And Section 12031(l) expressly ensures the right of self-defense in the home: "Nothing in this section shall prevent any person from having a loaded weapon, if it is otherwise lawful, at his or her place of residence, including any temporary residence or campsite." As a practical matter, should the need for self-defense arise, nothing in section 12031 restricts the open carry of unloaded firearms and ammunition ready for instant loading. *See* Cal.Penal Code § 12031(g).

In their Sur-Reply, Plaintiffs argue that despite its self-defense exception, section 12031 does not preserve the right to self-defense because such a need can arise "in a split second." *See* Pls.' Sur-Reply at 1-2. Like the District of Columbia requirement that firearms be "unloaded and dissembled or bound by a trigger lock or similar device," Plaintiffs maintain that a general requirement that handguns be kept unloaded is foreclosed by *Heller. See id.*

**\*6** The Court disagrees. There is an important distinction between section 12031 and the District of Columbia law at issue in *Heller,* which required that firearms in the home be rendered and kept inoperable *at all times. See Heller,* 128 S.Ct. at 2818. Unlike section 12031, the District of Columbia law did not contain, and the Supreme Court declined to infer, an exception for self-defense. *Id.* The *Heller* Court did not reach the question of whether the law

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.Supp.2d ----, 2010 WL 5137137 (S.D.Cal.)
**(Cite as: 2010 WL 5137137 (S.D.Cal.))**

would have been constitutional had there been an exception for self-defense. *See id.* As a consequence, the Court declines to assume that section 12031 places an unlawful burden on the right to carry a firearm for self-defense, and Plaintiffs have elected not to challenge section 12031.FN6

Although Plaintiffs have elected not to challenge section 12031, focusing instead on concealed carry pursuant to section 12050, the validity and open carry restrictions of section 12031 are relevant and important here. The *Heller* Court relied on 19th-century cases upholding concealed weapons bans, but in each case, the court upheld the ban because alternative forms of carrying arms were available. *See State v. Chandler,* 5 La. Ann. 489, 490 (1850) (holding concealed weapons ban "interfered with no man's right to carry arms ... in full open view"); *Nunn v. State,* 1 Ga. 243, 251 (1846) (holding concealed weapons ban valid so long as it does not impair the right to bear arms "altogether"). *See also Andrews v. State,* 50 Tenn. 165, 178 (1871) (holding that a statute that forbade openly carrying a pistol "publicly or privately, without regard to time or place, or circumstances," violated the state right to keep and bear arms); *State v. Reid,* 1 Ala. 612, 616-17 (1840) (observing that a regulation that amounts to a total ban would be "clearly unconstitutional")). For that reason, in its order denying Defendant's motion to dismiss, this Court emphasized that not *all* concealed weapons bans are presumptively lawful. *See* Order Denying William D. Gore's Motion to Dismiss (Doc. No. 7) at 7-10. *Heller* and the 19th-century cases it relied upon instruct that concealed weapons restrictions cannot be viewed in isolation; they must be viewed in the context of the government's overall scheme. Here, to the extent that Penal Code sections 12025 and 12050 and Defendant's policy burden conduct falling within the scope of the Second Amendment, if at all, the burden is mitigated by the provisions of section 12031 that expressly permit loaded open carry for immediate self-defense. With the foregoing in mind, the Court proceeds to the question of whether Defendant's policy satisfies the appropriate level of judicial scrutiny.FN7 Because Defendant's policy for issuing concealed carry licenses under section 12050 would pass constitutional muster even if it burdens protected conduct, the Court does not need to decide whether the Second Amendment encompasses Plaintiffs' asserted right to carry a loaded handgun in public.

**C. Whether Defendant's Policy Satisfies the Appropriate Level of Scrutiny**
**\*7** Plaintiffs acknowledge that the *Heller* Court expressly declined to prescribe the appropriate level of judicial scrutiny for firearms regulations, but they nevertheless argue that *"Heller* points clearly to strict scrutiny." *See* Pls.' Mem. at 9-15. Noting that the *Heller* Court ruled out a rational basis inquiry and the "interest-balancing" approach suggested by Justice Breyer, Plaintiffs contend that when a law interferes with "fundamental constitutional rights," it must be subject to strict scrutiny. Pls .' Mem. at 9. Plaintiffs also maintain that "the trend after *McDonald* is toward adopting strict scrutiny." *See* Pls.' Reply at 11. Defendant argues that, since *Heller,* heightened scrutiny has been reserved for instances in which the "core right" of possession of a firearm in the home is infringed. *See* Def.'s Mem. at 17. Defendant contends the appropriate standard is "reasonableness review," or in the alternative, intermediate judicial scrutiny. *See id.* at 11-17.

[4] The Court is unpersuaded that strict scrutiny is warranted here. Contrary to Plaintiffs' suggestion, fundamental constitutional rights are not invariably subject to strict scrutiny. In

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.Supp.2d ----, 2010 WL 5137137 (S.D.Cal.)
**(Cite as: 2010 WL 5137137 (S.D.Cal.))**

the First Amendment context, for example, content-neutral restrictions on the time, place and manner of speech are subject to a form of intermediate scrutiny. *See United States v. O'Brien,* 391 U.S. 367, 377, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968). Other restrictions on speech may be held to an even lower standard of review. *See Int'l Soc'y for Krishna Consciousness v. Lee,* 505 U.S. 672, 678-79, 112 S.Ct. 2701, 120 L.Ed.2d 541 (1992) (noting that limitations on expressive activity conducted in a nonpublic forum need only be reasonable, as long as they are viewpoint neutral); *Cornelius v. NAACP Legal Defense & Ed. Fund, Inc.,* 473 U.S. 788, 806, 105 S.Ct. 3439, 87 L.Ed.2d 567 (1985) (same). Drawing on First Amendment jurisprudence, several courts have applied intermediate scrutiny in the Second Amendment context. *See, e. g., United States v. Smith,* 2010 WL 3743842, at *8 (S.D.W.Va. Sept.20, 2010); *United States v. Walker,* 709 F.Supp.2d 460, 466 (E.D.Va.2010); *United States v. Marzzarella,* 595 F.Supp.2d 596 (W.D.Pa.2009). Accordingly, Plaintiffs are wrong in suggesting that the Court must apply strict scrutiny.

Plaintiffs are also wrong in suggesting there a trend after *McDonald* toward adopting strict scrutiny. In support of such a trend, Plaintiffs cite two cases.[FN8] The first case is *United States v. Engstrum,* 609 F.Supp.2d 1227, 1231-32 (D.Utah 2009). *Engstrum* predated *McDonald* and therefore cannot demonstrate a post-*McDonald* trend. The second case is *State of Wisconsin v. Schultz,* No. 10-CM-138, slip. op. (Wis.Ct.App. Oct. 12, 2010). There, the state appellate court appears to have relied on Justice Thomas' concurrence in *McDonald,* rather than the majority, in deciding the appropriate level of scrutiny. At best, *Engstrum* and *Schultz* reveal that a post-*McDonald* trend toward strict scrutiny may emerge but is thus far indiscernible. To date, a majority of cases citing to *McDonald* and employing some form of heightened scrutiny-most of which are challenges to criminal convictions-have employed intermediate scrutiny. *E.g., United States v. Skoien,* 614 F.3d 638 (7th Cir.2010); *United States v. Marzzarella,* 614 F.3d 85, 97 (3rd Cir.2010). The trend prior to *McDonald* was intermediate scrutiny. *See Heller v. District of Columbia,* 698 F.Supp.2d 179, 188 (D.D.C.2010) (*Heller II* ) (surveying the landscape of post-*Heller* decisions and joining "the majority of courts" in holding that "intermediate scrutiny is the most appropriate standard").

**\*8** Neither party has cited, and the Court is not aware of, a case in which a court has employed strict scrutiny to regulations that do not touch on the "core" Second Amendment right: possession in the home.[FN9] If it exists, the right to carry a loaded handgun in public cannot be subject to a more rigorous level of judicial scrutiny than the "core right" to possess firearms in the home for self-defense. *See Heller,* 128 S.Ct. at 2717 (focusing on the home as the place "where the need for defense of self, family, and property is most acute"); *McDonald,* 130 S.Ct. at 3036 (quoting same). If anything, the opposite is true; unlike possession in the home, carrying a concealed firearm in public presents a "recognized threat to public order" and "poses an imminent threat to public safety." *People v. Yarbrough,* 169 Cal.App.4th 303, 313-14, 86 Cal.Rptr.3d 674 (Cal.Ct.App.2010) (quotation marks and citations omitted); *see also McDonald,* 130 S.Ct. at 3105 (Stevens, J., dissenting) ("firearms kept inside the home generally pose a lesser threat to public welfare as compared to firearms taken outside ..."). At most, Defendant's policy is subject to intermediate scrutiny.

[5] In contrast with strict scrutiny, intermediate scrutiny, "by definition, allows [the government] to paint with a broader brush." *United States v. Miller,* 604 F.Supp.2d 1162, 1172

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.Supp.2d ----, 2010 WL 5137137 (S.D.Cal.)
**(Cite as: 2010 WL 5137137 (S.D.Cal.))**

(W.D.Tenn.2009). In *United States v. Marzzarella,* 614 F.3d 85, 98 (3rd Cir.2010), the Third Circuit crafted an intermediate scrutiny standard for the Second Amendment based on the various intermediate scrutiny standards utilized in the First Amendment context. Pursuant to that standard, intermediate scrutiny requires the asserted governmental end to be more than just legitimate; it must be either "significant," "substantial," or "important," and it requires the "fit between the challenged regulation and the asserted objective be reasonable, not perfect." *Id.* (citations omitted); *United States v. Huet,* 2010 U.S. Dist. Lexis 123597, at *28, 2010 WL 4853847 (W.D.Pa. Nov. 22, 2010).

[6] In this case, Defendant has an important and substantial interest in public safety and in reducing the rate of gun use in crime. In particular, the government has an important interest in reducing the number of concealed weapons in public in order to reduce the risks to other members of the public who use the streets and go to public accommodations. *See* Zimring Decl. The government also has an important interest in reducing the number of concealed handguns in public because of their disproportionate involvement in life-threatening crimes of violence, particularly in streets and other public places. *Id.* Defendant's policy relates reasonably to those interests. Requiring documentation enables Defendant to effectively differentiate between individuals who have a bona fide need to carry a concealed handgun for self-defense and individuals who do not.

The Court acknowledges Plaintiffs' argument that many violent gun crimes, even a majority, are committed by people who cannot legally have guns, and the ongoing dispute over the effectiveness of concealed weapons laws. *See* Moody Decl. But under intermediate scrutiny, Defendant's policy need not be perfect, only reasonably related to a "significant," "substantial," or "important" governmental interest. *Marzzarella,* 614 F.3d at 98. Defendant's policy satisfies that standard. Accordingly, the Court **DENIES** Plaintiffs' motion for summary judgment and **GRANTS** Defendant's motion for summary judgment on Plaintiffs' right to bear arms claim.

## II. Equal Protection

**\*9** [7] The "Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Center, Inc.,* 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985); *Shaw v. Reno,* 509 U.S. 630, 113 S.Ct. 2816, 125 L.Ed.2d 511 (1993). When a government's action does not involve a suspect classification or implicate a fundamental right, even intentional discrimination will survive constitutional scrutiny for an equal protection violation as long as it bears a rational relation to a legitimate state interest. *New Orleans v. Dukes,* 427 U.S. 297, 303-04, 96 S.Ct. 2513, 49 L.Ed.2d 511 (1976); *Cleburne,* 473 U.S. at 439; *Lockary v. Kayfetz,* 917 F.2d 1150, 1155 (9th Cir.1990). However, "[w]here fundamental rights and liberties are asserted under the Equal Protection Clause, classifications which might invade or restrain them must be closely scrutinized." *Hussey v. City of Portland,* 64 F.3d 1260, 1265 (9th Cir.1995) (quoting *Harper v. Va. Bd. of Elections,* 383 U.S. 663, 670, 86 S.Ct. 1079, 16 L.Ed.2d 169 (1966)).

## A. Defendant's "Good Cause" Policy

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.Supp.2d ----, 2010 WL 5137137 (S.D.Cal.)
**(Cite as: 2010 WL 5137137 (S.D.Cal.))**

[8] For the reasons stated in above, the Court concludes that Defendant's "good cause" policy is valid. Accordingly, the policy does not treat similarly situated individuals differently because not all law-abiding citizens are similarly situated, as Plaintiffs contend. Those who can document circumstances demonstrating "good cause" are situated differently than those who cannot. Therefore, Defendant's "good cause" policy does not violate equal protection.

**B. Defendant's Treatment of Honorary Deputy Sheriffs**

The Honorary Deputy Sheriffs' Association ("HDSA") is a civilian organization whose primary purpose is to finance projects for the San Diego Sheriff's Department. Plaintiffs allege that Defendant engages in preferential treatment of HDSA members. Pls.' Mem. at 20-22. Defendant denies such allegation and maintains that "Sheriff Gore does not offer special treatment to anyone and membership in the [HDSA] has no bearing on the ability to obtain a CCW license." Def.'s Mem. at 22. Plaintiffs do not contest or attempt to refute the premise that Defendant's policy is facially even-handed, instead asserting arguments consistent with a purely as-applied challenge. *See generally* Pls.' Mem.; Pls.' Reply.

[9] A concealed weapons licensing program administered so as to unjustly discriminate between persons in similar circumstances may deny equal protection. *Guillory v. County of Orange,* 731 F.2d 1379, 1383 (9th Cir.1984); *see also Kuzinich v. County of Santa Clara,* 689 F.2d 1345, 1349 (9th Cir.1983) (citing *Yick Wo v. Hopkins,* 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220 (1886)). At this stage, the Court evaluates whether there is actual evidence that would allow a reasonable jury to conclude first, that others similarly situated to Plaintiffs generally have not been treated in a like manner; and second, that the denials of concealed weapons licenses to them were based on impermissible grounds. *See March v. Rupf,* 2001 WL 1112110, at *5 (N.D.Cal.2001) (citing *Kuzinich v. County of Santa Clara,* 689 F.2d 1345, 1349 (9th Cir.1983) (applying this test to a claim of "selective prosecution" in zoning decision context)).

**\*10** In *March v. Rupf,* plaintiffs asserted claims similar to those at issue here, that in granting concealed weapons licenses, sheriffs favored a "privileged class" of individuals. 2001 WL 1112110, at *5 (N.D.Cal.2001). Plaintiffs submitted more than 700 pages of applications and renewals. *Id.* The court observed that "some applicants were granted concealed weapons licenses after stating on paper basically the same grounds for issuance upon which plaintiffs' applications were denied." *Id.* Nonetheless, the court held there was no genuine issue of material fact because the records did not establish those who received licenses were similarly situated to plaintiffs. *Id.* The records were incomplete-they did not reveal information compiled in background checks, oral interviews and the like-and the records did not establish a causal connection between factors suggesting "privileged class" and the issuance of a concealed weapons license. *Id.* The court concluded that, "without evidence of anything more than vagaries in [ ] administration," plaintiffs equal protection claim could not survive summary judgment. *Id.*

Like the plaintiffs in *March,* Plaintiffs here cannot demonstrate they were treated differently than similarly situated others. To show disparate treatment, Plaintiffs have offered a number of HDSA renewal applications as a contrast to Plaintiffs initial applications. *See* Exs. U-PP. But the two types of applications are not comparable; renewal applications are gener-

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.Supp.2d ----, 2010 WL 5137137 (S.D.Cal.)
**(Cite as: 2010 WL 5137137 (S.D.Cal.))**

ally issued on the spot and subject to less rigorous documentation requirements than initial applications. *See* Pelowitz Decl. ¶ 12. Just one of the Plaintiffs contends his renewal was denied, and in that case, the renewal was granted following an appeal. *See* Exs. K-S. Accordingly, the evidence introduced by Plaintiffs does not establish or create a genuine issue of material fact regarding whether similarly situated individuals were treated differently. At most, it demonstrates "vagaries in [ ] administration." *See March,* 2001 WL 1112110, at *5 (N.D.Cal.2001). Moreover, for the reasons stated above, Plaintiffs have not demonstrated the denials of concealed weapons licenses to them were based on impermissible grounds. Defendant's policy does not favor HDSA members in violation of the equal protection clause of the Fourteenth Amendment.

Accordingly, the Court **DENIES** Plaintiffs' motion for summary judgment and **GRANTS** Defendant's motion for summary judgment on Plaintiffs' equal protection claims as they relate to Defendant's "good cause" policy and treatment of HDSA members.

**C. Defendant's Residency Requirement**[FN10]

[10] For the reasons stated below, in differentiating between residents (and part-time residents who spend more than six months of the taxable year within the County) and non-residents, Defendant utilizes means that are substantially related to a substantial governmental interest. Because residents and non-residents are situated differently, the residency requirement of Defendant's policy does not violate equal protection. Therefore, the Court **GRANTS** Defendant's motion for summary judgment on Plaintiffs' equal protection claim as it relates to Defendant's residency requirement.

**III. Right to Travel**

*11 [11][12][13][14] The right to travel is usually considered to be one of the rights guaranteed by the Privileges and Immunities Clause of Article IV and the Privileges and Immunities Clause of the Fourteenth Amendment. *See Attorney General of N.Y. v. Soto-Lopez,* 476 U.S. 898, 902, 106 S.Ct. 2317, 90 L.Ed.2d 899 (1986) (plurality) (citations omitted). The right to travel embraces at least three different components: (1) the right of a citizen of one State to enter and to leave another State; (2) the right to be treated as a welcome visitor rather than an unfriendly alien when temporarily present in the second State, and (3) for those travelers who elect to become permanent residents, the right to be treated like other citizens of that State. *Saenz v. Roe,* 526 U.S. 489, 500, 119 S.Ct. 1518, 143 L.Ed.2d 689 (1999). However, not all regulations that merely have an effect on travel raise an issue of constitutional dimension. Rather, "[a] state law implicates the right to travel when it actually deters such travel, when impeding travel is its primary objective, or when it uses any classification which serves to penalize the exercise of that right." *Soto-Lopez,* 476 U.S. at 903 (plurality) (internal quotation marks and citations omitted). A law embracing means that are "substantially" related to a "substantial" government interest will survive a right to travel analysis. *Bach v. Pataki,* 408 F.3d 75, 88 n. 27 (2nd Cir.2005). Plaintiffs allege Defendant's residency requirement "penalizes applicants for traveling and spending time outside of San Diego," FAC ¶ 122, and accordingly, Plaintiffs allege the policy burdens the right to travel. Relying on *Bach,* Defendant contends that its policy passes muster as a bona fide residence requirement. *See* Def.'s Mem. at 30.

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.Supp.2d ----, 2010 WL 5137137 (S.D.Cal.)
**(Cite as: 2010 WL 5137137 (S.D.Cal.))**

Like the restrictions at issue here, the Second Circuit in *Bach* evaluated restrictions that inhibited non-residents from applying for a permit to carry a concealed weapon. Assuming, without deciding, that entitlement to a New York carry license was a privilege under Article IV of the Privileges and Immunities Clause, the Second Circuit concluded that New York had a substantial interest in monitoring gun licensees and that limiting licenses to residents and those working primarily within the state was sufficiently related to that interest. *Bach,* 408 F.3d at 91-94. The Court is unable to discern a meaningful distinction between the issues facing the Second Circuit in *Bach* and those at issue here. Adopting the rationale set forth in that decision, the Court concludes there is no genuine issue of material fact as to whether Defendant's policy violates the right to travel. Accordingly, the Court **GRANTS** Defendant's motion for summary judgment on Plaintiffs' right to travel claim.FN11

**IV. Due Process**

[15][16] A threshold requirement for asserting a due process claim is the existence of a property or liberty interest. *Board of Regents v. Roth,* 408 U.S. 564, 569, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). Plaintiffs' due process claim is governed by *Erdelyi v. O'Brien,* 680 F.2d 61, 63 (9th Cir.1982), which held that by virtue its discretionary language, Section 12050 does not create a property interest. Morever, the Court held that the Plaintiff in that case "did not have a liberty interest in obtaining a concealed weapons license." *Id.* at 64. Pursuant to *Erdelyi,* the Court concludes that because Plaintiffs do not have "property or liberty interest in a concealed weapons license, the Due Process Clause did not require [Defendant] to provide [them] with due process before denying [their] initial [license] application[s]." *Id.* In any event, there is nothing to suggest that Defendant's licensing procedures deprive Plaintiffs of the opportunity to be heard at a meaningful time in a meaningful manner. *See Mathews v. Eldridge,* 424 U.S. 319, 333, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). The Court **GRANTS** Defendant's motion for summary judgment on Plaintiffs' due process claim.

*CONCLUSION*

**\*12** For the foregoing reasons, the Court concludes that Defendant's policy does not infringe on Plaintiffs' right to bear arms or violate equal protection, the right to travel, the Privileges and Immunities Clause of Article IV, or due process.FN12 Accordingly, the Court **DENIES** Plaintiffs' Motion for Summary Judgment and **GRANTS** Defendant's Motion for Summary Judgment.

**IT IS SO ORDERED.**

FN1. In 2006, the Sheriff's Department initiated an interview process to assist applicants and staff in determining pre-eligibility and to avoid applicants having to pay application fees and firearms safety course fees when they would not qualify for the license. The interview is voluntary and any person can submit an application without the assistance offered by the interview. Based on what the applicant outlines during the interview, counter clerks are permitted to offer an educated guess as to whether an applicant is eligible for a license based on the scenarios described by applicants. *See* Def.'s SUF ¶ 7.

Plaintiffs contend that the counter clerks sometimes discourage applicants from ap-

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.Supp.2d ----, 2010 WL 5137137 (S.D.Cal.)
(Cite as: 2010 WL 5137137 (S.D.Cal.))

plying for a license, and in doing so, they serve Defendants' purpose of minimizing the number of applicants and the documentation of denials.

FN2. Against the District's urging, the Court declined to construe the statute as containing an exception for self-defense. *Id.* at 2818.

FN3. Defendant also contends that Plaintiffs' challenge amounts to a backdoor attack on the constitutionality of section 12050, rather than mere challenge to its policy. *See* Def.'s Mem. at 8. The Court addresses this contention below.

FN4. In its order denying Defendant's motion to dismiss, based on the posture of the case and the briefing of the parties, the Court abided the assumption that section 12031 unlawfully burdens the right to self-defense. At this stage, however, the Court scrutinizes the assumption more carefully.

FN5. There are also exceptions for individuals such as security guards, police officers and retired police officers, private investigators, members of the military, hunters, target shooters, persons engaged in "lawful business" who possess a loaded firearm on business premises and persons who possess a loaded firearm on their own private property. *See* Cal.Penal Code §§ 12031(b)-(d) and (h).

FN6. The Court notes that section 12031 has been challenged and upheld following *Heller. See People v. Flores,* 169 Cal.App.4th 568, 576-77, 86 Cal.Rptr.3d 804 (Cal.Ct.App.2008) (holding "section 12031 does not burden the core Second Amendment right announced in *Heller*-the right of law-abiding, responsible citizens to use arms in defense of hearth and home-to any significant degree").

FN7. Plaintiffs maintain they are not challenging the constitutionality of any of the California Penal Code sections. Pls .' Reply at 1-3. Instead, Plaintiffs contend they are challenging only the Defendant's policy of issuing concealed weapons licenses, both as applied and on its face. *Id.* In doing so, Plaintiffs urge the Court to hold that section 12050's "good cause" provision is satisfied whenever applicants of good moral character assert self-defense as their basis. *See* Pls.' Reply at 1 ("This means holding section 12050's 'good cause' criterion to be satisfied where CCW applicants of good moral character assert 'self-defense as their basis' "). Defendant, however, maintains Plaintiffs are asserting a back door attack on the constitutionality of section 12050. *See* Def.'s Mem. at 8 ("Plaintiffs are asking the Court to strike the 'good cause' language from the statute"); Def.'s Reply at 1 (Plaintiffs are "asking the court to mandate that the State of California become a 'shall issue' state by forbidding Sheriffs from requiring a showing of 'good cause' for concealed carry licensure").

Section 12050 provides that when applicants meet certain requirements, and the sheriff finds that "good cause" exists, the sheriff "may issue" a license to carry a concealed firearm. Cal.Penal Code § 12050(a). "Section 12050 explicitly grants discretion to the issuing officer to issue or not issue a license to applicants meeting the minimum statutory requirements." *Erdelyi v. O'Brien,* 680 F.2d 61, 63 (9th Cir.1982) ; *see also Gifford v. City of Los Angeles,* 88 Cal.App.4th 801, 805, 106 Cal.Rptr.2d

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.Supp.2d ----, 2010 WL 5137137 (S.D.Cal.)
**(Cite as: 2010 WL 5137137 (S.D.Cal.))**

Page 19

164 (Cal.Ct.App.2001) (observing that "Section 12050 gives "extremely broad dis-cretion" to the sheriff concerning the issuance of concealed weapons licenses"); *Nichols v. County of Santa Clara,* 223 Cal.App.3d 1236, 1241, 273 Cal.Rptr. 84 (Cal.Ct.App.1990) (same). Holding that sheriffs must issue concealed carry licenses all individuals who meet the minimum statutory requirements and assert self-defense as their basis would eliminate the discretion afforded sheriffs under section 12050. Accordingly, Plaintiffs' challenge cannot be properly construed as a mere challenge to Defendant's policy.

FN8. Following submission of the case, Plaintiffs filed a Notice of Lodgment of Recent Authority in Support of Plaintiffs' Motion for Partial Summary Judgment. (Doc. No. 62.) The Lodgment contains two cases as exhibits: *United States v. Ligon,* 2010 U.S. Dist. Lexis 116272, 2010 WL 4237970 (D.Nev. Oct. 20, 2010) and *United States v. Huet,* 2010 U .S. Dist. Lexis 123597, 2010 WL 4853847 (Nov. 22, 2010). Neither of the cases changes the Court's analysis in a meaningful way: The court in *Ligon* employed strict scrutiny for the sake of argument, and the court in *Huet* did not employ a levels of scrutiny analysis at all, instead focusing on the restriction's impact on the "core right" of possession in the home.

FN9. In fact, the Court is not aware of a case in which a court has employed *any* form of heightened scrutiny of regulations that do not affect the "core right."

FN10. The only Plaintiff who alleges the residency requirement impacted his application is Edward Peruta, and the parties agree that Peruta's application was denied for lack of "good cause." *See* Pls.' Consolidated SUF ¶ 15. In addition to challenging the residency requirement as applied to Peruta, Plaintiffs challenge facial validity of the residence requirement.

FN11. In addition to their right to travel claim, which arises under the Privileges and Immunities Clause of Article IV and the Privileges and Immunities Clause of the Fourteenth Amendment, Plaintiffs have asserted a separate claim for relief under the Privileges and Immunities Clause of Article IV. In its motion for summary judgment, Defendant suggests the claims are identical, *see* Def.'s Mem. at 29, and Plaintiffs have not disputed Defendant's contention, *see generally* Pls.' Mem; Pls.' Reply. The Court agrees that separate analyses of the claims would be duplicative and dismisses Plaintiffs' Privileges and Immunities claim along with their right to travel claim.

FN12. Plaintiffs have also asserted a claim for relief under 42 U.S.C. § 1983 for Defendant's alleged violation of California Penal Code section 12050. Because there is no cause of action under section 1983 for violation of a state statute, *see Moore v. Marketplace Restaurant, Inc.,* 754 F.2d 1336, 1349 (7th Cir.1985), the Court dismisses the claim.

S.D.Cal.,2010.
Peruta v. County of San Diego
--- F.Supp.2d ----, 2010 WL 5137137 (S.D.Cal.)

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.Supp.2d ----, 2010 WL 5137137 (S.D.Cal.)
**(Cite as: 2010 WL 5137137 (S.D.Cal.))**

END OF DOCUMENT

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.