IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| REBEKAH JENNINGS; BRENNAN HARMON; ANDREW PAYNE; NATIONAL RIFLE ASSOCIATION OF AMERICA, INC., | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| THE BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES, et al., | ) ) ) ) | |
| Defendants. | ) | Civil Action No. 5:10-CV-140-C |

**ORDER**

On this date, the Court considered:

(1)    Defendants Bureau of Alcohol, Tobacco, Firearms and Explosives; Kenneth E. Melson, in his official capacity as Acting Director of the Bureau of Alcohol, Tobacco, Firearms and Explosives; and Eric H. Holder, Jr., in his official capacity as Attorney General of the United States' ("Defendants") Motion to Dismiss or, in the Alternative, for Summary Judgment, Brief, and Appendix, filed December 22, 2010;

(2)    Plaintiffs' Response and Cross-Motion for Summary Judgment, Brief, and Appendix, filed January 28, 2011;

(3)    Defendants' Combined Reply in Support of their Motion to Dismiss or, in the Alternative, for Summary Judgment and Response to Plaintiffs' Cross-Motion for Summary Judgment, Brief, and Appendix, filed April 6, 2011;

(4)    Plaintiffs' Reply in Support of Plaintiffs' Cross-Motion for Summary Judgment, filed May 18, 2011;

(5)    Defendants' Notice of Recent Authority, filed May 12, 2011;

(6)    Plaintiffs' Notice of Supplemental Authority, filed July 18, 2011;

(7)     Defendants' Response, filed July 22, 2011; and

(8)     Brief of *Amici Curiae* Brady Center to Prevent Gun Violence, Graduate Student Assembly and Student Government of the University of Texas at Austin, Mothers Against Teen Violence, Students for Gun-Free Schools in Texas, and Texas Chapters of the Brady Campaign to Prevent Gun Violence in Support of Defendants, filed January 28, 2011.

After considering the relevant arguments and authorities, the Court **DENIES** Defendants' Motion to Dismiss Pursuant to Rule 12(b)(1), **GRANTS** Defendants' Motion for Summary Judgment, **DENIES** as moot Defendants' Motion to Dismiss Pursuant to Rule 12(b)(6), and **DENIES** Plaintiffs' Cross-Motion for Summary Judgment.

## I.  FACTS

### a.  Preliminary Statement

Plaintiffs bring this action for declaratory judgment and injunctive relief challenging the constitutionality of federal statutes and regulations that ban the sale by federal firearm license holders ("FFLs") of handguns and handgun ammunition to persons under the age of twenty-one ("the ban"). The crux of Plaintiffs' allegations is that the ban violates both the Second Amendment to the United States Constitution and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

### b.  Statutory Scheme

The statutes and regulations that implement the ban, and thus are the subject of this lawsuit, are the following:

(1)     18 U.S.C. § 922(b)(1), which states: "It shall be unlawful for any licensed importer, licensed manufacturer, licensed dealer, or licensed collector to sell or deliver any firearm or ammunition to any individual who the licensee knows or has reasonable cause to believe is less than eighteen years of age, and, if the firearm, or ammunition is other than a shotgun or rifle, or ammunition for a shotgun or rifle, to any individual who the

licensee knows or has reasonable cause to believe is less than twenty-one years of age."

(2)     18 U.S.C. § 922(c)(1), which prescribes that "a licensed importer, licensed manufacturer, or licensed dealer may sell a firearm to a person who does not appear in person at the licensee's business premises . . . only if" the person signs a sworn statement attesting "that, in the case of any firearm other than a shotgun or a rifle, I am twenty-one years or more of age."

(3)     27 C.F.R. § 478.99(b)(1), which provides: "A licensed importer, licensed manufacturer, licensed dealer, or licensed collector shall not sell or deliver any firearm or ammunition . . . if the firearm, or ammunition, is other than a shotgun or rifle, or ammunition for a shotgun or rifle, to any individual who the importer, manufacturer, dealer, or collector knows or has reasonable cause to believe is less than 21 years of age."

(4)     27 C.F.R. §§ 478.124(a), 478.96(b), which require that federal firearms licensees obtain a signed copy of Form 4473 before transferring a handgun to a purchaser.  Form 4473 states that the information provided therein "will be used to determine whether [the transferee is] prohibited under law from receiving a firearm" and instructs licensees that it is "unlawful for a licensee to sell any firearm other than a shotgun or rifle to any person under the age of 21."[1]

Each of these laws operates in reference to FFLs.  Title 18, Section 922(a)(1)(A) of the U.S. Code requires any person who "engage[s] in the business of importing, manufacturing, or dealing in firearms" to obtain a federal firearms license.  A firearms "dealer," in turn, is any person who, inter alia, "engage[s] in the business of selling firearms at wholesale or retail," including pawnbrokers.  18 U.S.C. § 921(a)(11)(A), (C).  A person "engage[s] in the business" of selling firearms, and therefore must obtain a federal firearms license, if he "devotes time, attention, and labor to dealing in firearms as a regular course of trade or business with the principal objective of livelihood and profit through the repetitive purchase and resale of

---

[1]Plaintiffs do not challenge 18 U.S.C. § 922(x), which prohibits anyone, not just FFLs, from transferring handguns to individuals under 18 and also prohibits individuals under 18 from possessing handguns, subject to specified exceptions.

firearms." *Id.* § 921(a)(21)(C).  In other words, anyone who engages in the firearms business regularly must become an FFL, and the ban therefore forecloses 18- to 20-year-olds from gaining access to the entire licensed market for handguns and handgun ammunition.  The ban, however, does not apply to other avenues such as gifts or to those who sell arms on an irregular basis only.[2]

### c. Plaintiffs

Rebekah Jennings is a 19-year-old resident of Boerne, Texas.  She is a decorated competitive pistol shooter but does not own a pistol of her own and must rely on her father to loan her his pistol for practice and competition.  Jennings reportedly desires to purchase her own handgun from an FFL, both for her self-protection and to further her interest in competitive pistol shooting.

Brennan Harmon is a 19-year-old resident of San Antonio, Texas, where she lives alone in an apartment.  There have been shooting incidents in apartment complexes that neighbor Harmon's apartment.  Harmon's family owns several firearms, and her father has instructed her in their proper and safe handling.  Harmon currently owns a rifle and a shotgun, but she does not own a handgun.  She finds the long guns insufficient for self-defense.  Harmon therefore desires to own a handgun for self-defense and other lawful purposes, and she would purchase one from an FFL if such a transaction were not prohibited under the ban.

---

[2]The Court emphasizes that the ban does *not* prohibit the possession of handguns or handgun ammunition by 18- to 20-year-olds.  Those in this age group are free to acquire handguns and ammunition from sources other than FFLs.  Even still, the ban is temporal in nature, meaning the prohibition expires once the would-be buyer reaches the age of 21.

Andrew Payne is an 18-year-old resident of Lubbock, Texas.  Payne and his father visit shooting ranges for recreation and to gain proficiency in the effective use of firearms, including handguns.  Payne does not own a handgun, but he would purchase a handgun and handgun ammunition if such a transaction were not illegal under the ban.

The National Rifle Association ("NRA") is a membership organization committed to protecting and defending the fundamental right to keep and bear arms, as well as the safe and responsible use of firearms for self-defense and other lawful purposes.  Many of the NRA's members are 18-to-20 years old or will enter that age bracket during the pendency of this litigation.  Under the ban, these members are unable to purchase a handgun or handgun ammunition from an FFL.

One representative NRA member in this class is Halie Fewkes, a 19-year-old resident of Washington.  She lives in Pullman, where she attends college.  She plans to live in an off-campus apartment next semester, and she would like to purchase a new handgun to keep in that apartment for self-defense and for use in target shooting.  The ban, however, prevents her from purchasing a handgun from a licensed dealer.  She is not aware of anyone she knows selling a used firearm, and she is uncomfortable with the idea of engaging in a face-to-face transaction with an unlicensed stranger.

The NRA's licensed dealer members also allege to be harmed by the ban, as the law prohibits them from making profitable handgun sales and handgun ammunition sales to otherwise qualified 18- to 20-year-olds.  Roger Koeppe and Paul White are two such members; they own and operate FFLs in Houston, Texas, and Richmond, Utah, respectively.

## II.  STANDARDS

### a.  Motion to Dismiss

A court must dismiss a claim pursuant to a Rule 12(b)(1) motion if it lacks subject matter jurisdiction over the claim asserted in the complaint.  Fed. R. Civ. P. 12(b)(1).  If a Rule 12(b)(1) motion is filed conjunctively with any other Rule 12 motions, the court should consider the Rule 12(b)(1) attack first.  *See Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).  The party seeking the federal forum bears the burden of establishing jurisdiction.  *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001).

Standing is one aspect of justiciability, and a federal court's jurisdiction is invoked only when the plaintiff has actually suffered injury resulting from the conduct of the defendant.  *Warth v. Seldin*, 422 U.S. 490, 499 (1975); *see Lewis v. Knutson*, 699 F.2d 230, 236 (5th Cir. 1983) ("[T]he constitutional limitation continues to arise when plaintiff fails to allege a personalized injury.").  Additionally, because Article III standing requires an injury-in-fact caused by a defendant's challenged conduct that is redressable by a court, *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992), a party is ordinarily denied standing to assert the rights of third persons.  *See Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 263-64 (1977).

### b.  Motion for Summary Judgment

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A genuine dispute of material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-movant, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); that is, "[a]n issue is material if its resolution could affect the outcome of the action."

*Wyatt v. Hunt Plywood Co.*, 297 F.3d 405, 409 (5th Cir. 2002).  When reviewing a motion for summary judgment, the court views all facts and evidence in the light most favorable to the non-moving party.  *United Fire & Cas. Co. v. Hixson Bros.*, 453 F.3d 283, 285 (5th Cir. 2006).  In doing so, the court "refrain[s] from making credibility determinations or weighing the evidence."  *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007).

Where parties have filed cross-motions for summary judgment, the court must consider each motion separately because each movant bears the burden of showing that no genuine dispute of material fact exists and that it is entitled to judgment as a matter of law.  *Shaw Constructors, Inc. v. ICF Kaiser Eng'rs, Inc.*, 395 F.3d 533, 538-39 (5th Cir. 2004).

## III.  ANALYSIS

### a.  Standing

Defendants challenge the standing to bring suit of both firearms dealers subject to the ban's criminal prohibition and the 18- to 20-year-olds whose constitutional rights are allegedly burdened by the statutory scheme.  Article III restricts the judicial power to actual "cases" and "controversies," a limitation understood to confine the federal judiciary to "the traditional role of Anglo-American courts, which is to redress or prevent actual or imminently threatened injury to persons caused by private or official violation of law."  *Summers v. Earth Island Inst.*, 555 U.S. 488, 129 S. Ct. 1142, 1148 (2009); *see* U.S. Const. art. III, § 1.  The doctrine of standing enforces this limitation.  *Summers*, 129 S. Ct. at 1149; *Lujan*, 504 U.S. at 559-60.

In general, individuals who allege that their constitutional rights are burdened by a law have standing to sue.  In *Doe v. Bolton*, for example, the Supreme Court held that not only "Georgia-licensed doctors consulted by pregnant women" but also a pregnant woman herself has

standing to challenge a statute criminalizing the provisions of most abortions even though "[t]he physician [was] the one against whom these criminal statutes directly operate[d] . . . ."  410 U.S. 179, 187-88 (1973); *see also Roe v. Wade*, 410 U.S. 113, 124 (1973) (holding that "a pregnant single woman thwarted by the Texas criminal abortion laws, had standing to challenge those statutes.").  Similarly, in *Virginia State Board of Pharmacy v. Virginia Citizens Consumer Council, Inc.*, the Court allowed a challenge to a statute prohibiting pharmacists from advertising their prices for prescription drugs brought "not by one directly subject to its prohibition, that is, a pharmacist, but by prescription drug consumers who claim they would greatly benefit if the prohibition were lifted and advertising freely allowed."  425 U.S. 748, 753 (1976).

The Individual Plaintiffs do not own handguns, but each of them desires to obtain one for lawful purposes, including self-defense.  They have all identified a specific handgun they would purchase from an FFL if lawfully permitted to do so.  The FFLs from whom Harmon and Payne would purchase their handguns have refused to sell them handguns in the past because they are under 21.  Were the Court to hold that the ban is unconstitutional, it could provide the relief that Plaintiffs seek.  Therefore, the Individual Plaintiffs have standing to sue even though they have not been threatened with or been subject to prosecution under the ban.

Once a court has determined that at least one plaintiff has standing, it need not consider whether the remaining plaintiffs have standing to maintain the suit.  *Arlington Heights*, 429 U.S. at 264.  Nevertheless, out of an abundance of caution, the Court will address whether the NRA, as an association or organization, has standing as well.

An association may have standing solely as the representative of its members, even in the absence of injury to itself. *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 342 (1972). The test for representational standing requires that

(1)     the members of the association would have standing individually,

(2)     the interests pursued through the litigation are germane to the association's purpose, and

(3)     neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.

*Nat'l Treasury Emps. Union v. United States Dep't of the Treasury*, 25 F.3d 237, 241 (5th Cir. 1994) (citing *Hunt*, 432 U.S. at 343).

The NRA has a stated interest in vindicating the Second Amendment rights of its membership, and this suit does not require the participation of its individual members in light of the equitable relief it seeks.  Furthermore, in addition to Jennings, Harmon, and Payne, whom the Court has held have standing and each of whom is an NRA member, the NRA presents evidence of several other similarly situated members between the ages of 18 and 20 who allege to have been injured by the ban in ways similar to those asserted by the Individual Plaintiffs.  Therefore, the NRA has standing to bring this suit on behalf of its law-abiding 18- to 20-year-old members.

The NRA also brings this suit on behalf of its FFL, or vendor, members.  As the Supreme Court has explained, "vendors and those in like positions have been uniformly permitted to resist efforts at restricting their operations by acting as advocates of the rights of third parties who seek access to their market or function." *Craig v. Boren*, 429 U.S. 190, 195 (1976) (collecting cases).  In *Craig*, for example, the Supreme Court held that a licensed vendor of low-alcohol beer had

9

standing to challenge an Oklahoma statute that barred the vendor from selling such beer to 18- to

20-year-old men but allowed its sale to 18- to 20-year-old women.  As the Court noted:

> The legal duties created by the statutory sections under challenge
> are addressed directly to vendors such as appellant.  She is obliged
> either to heed the statutory discrimination, thereby incurring a
> direct economic injury through the constriction of her buyers'
> market, or to disobey the statutory command and suffer, in the
> words of Oklahoma's Assistant Attorney General, "sanctions and
> perhaps loss of license."  This Court repeatedly has recognized that
> such injuries establish the threshold requirements of a "case or
> controversy" mandated by Art. III.

*Id.* at 194 (internal citations omitted).  The Court further held that "[a]s a vendor with standing to

challenge the lawfulness of [the sales restriction], appellant . . . is entitled to assert those

concomitant rights of third parties that would be 'diluted or adversely affected' should her

constitutional challenge fail and the statutes remain in force."  *Id.* at 195.  "Otherwise,"

explained the Court, "the threatened imposition of governmental sanctions might deter appellant

. . . and other similarly situated vendors from selling 3.2% beer to young males, thereby ensuring

that 'enforcement of the challenged restriction against the [vendor] would result indirectly in the

violation of third parties' rights.'"  *Id.* (quoting *Warth v. Seldin*, 422 U.S. 490, 510 (1975)).

    Both the Supreme Court and the Fifth Circuit have repeatedly applied this rationale to

hold that vendors and service providers have standing to challenge sales and similar restrictions

that burden their would-be customers' constitutional rights.  *See, e.g., Carey v. Population Servs.*

*Int'l*, 431 U.S. 678, 681-84 (holding that "corporation primarily engaged in the mail-order retail

sale of nonmedical contraceptive devices" had standing to challenge a statute that made it a

crime, *inter alia*, "for anyone other than a licensed pharmacist to distribute contraceptives to

persons 16 or over" and could assert the privacy rights of its would-be customers); *Reliable*

*Consultants, Inc. v. Earle*, 517 F.3d 738, 740, 743 (5th Cir. 2008) (vendor had standing to challenge statute criminalizing the sale of "a device designed or marketed for sexual stimulation" and could assert the constitutional rights of its customers); *Deerfield Med. Ctr. v. City of Deerfield Beach*, 661 F.2d 328, 333-34 (5th Cir. 1981) (holding that plaintiffs who wished to open an abortion clinic had standing to challenge an adverse zoning decision and could assert the rights of their would-be clients); *see generally United States v. Coil*, 442 F.3d 912, 915 n.2 (5th Cir. 2006) ("The Supreme Court has consistently upheld the standing of vendors to challenge the constitutionality of statutes on their customers' behalf where those statutes are directed at the activity of the vendors.").

The ban prevents 18- to 20-year-olds from purchasing handguns and handgun ammunition from FFLs who would likely purchase these items were it legal to do so.  The NRA presents evidence from its vendor members that they have lost profits from refusing to sell handguns to 18- to 20-year-olds and would sell handguns to law-abiding citizens in this age range if it were legal to do so.  The fact that the ban restricts a would-be buyers' market demonstrates a judicially cognizable injury directly affecting FFLs.  *See Craig*, 429 U.S. at 194.  As such, the NRA also has standing to bring this suit on behalf of its FFL members.  Therefore, Defendants' Motion to Dismiss pursuant to Rule 12(b)(1) is **DENIED**.

### b.  Second Amendment

The text of the Second Amendment reads: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II.  In 2008, the Supreme Court held in *District of Columbia v. Heller* that

the Second Amendment guarantees an individual right to possess and carry weapons.  554 U.S.

570, 592 (2008).  The Court stated, however, that the right to bear arms is not absolute:

> Like most rights, the right secured by the Second Amendment is
> not unlimited.  From Blackstone through the 19th-century cases,
> commentators and courts routinely explained that the right was not
> a right to keep and carry any weapon whatsoever in any manner
> whatsoever and for whatever purpose.  For example, the majority
> of the 19th-century courts to consider the question held that
> prohibitions on carrying concealed weapons were lawful under the
> Second Amendment or state analogues.  Although we do not
> undertake an exhaustive historical analysis today of the full scope
> of the Second Amendment, ***nothing in our opinion should be
> taken to cast doubt on*** longstanding prohibitions on the possession
> of firearms by felons and the mentally ill, or laws forbidding the
> carrying of firearms in sensitive places such as schools and
> government buildings, or ***laws imposing conditions and
> qualifications on the commercial sale of arms***.

*Heller*, 554 U.S. at 626-27 (citations omitted and emphasis added).  In so qualifying the Second

Amendment, the Court carved out conditions and qualifications on the commercial sale of arms

as presumptively lawful regulatory measures.  *See id.* at 627 n.26.

    While this Court has found no case dealing with a post-*Heller* interpretation of the ban,

most courts that have considered challenges to other above-mentioned presumptively lawful

regulations have made relatively short shrift of them.  *See, e.g.*, *United States v. Scroggins*, 599

F.3d 433, 451 (5th Cir. 2010) (post-*Heller* decision upholding as constitutional 18 U.S.C.

§ 922(g)(1), which criminalizes the possession of a firearm by a felon); *United States v.

Dorosan*, 350 F. App'x 874, 875-76 (5th Cir. 2009) (upholding as constitutional under the

"sensitive places" exception in *Heller* 39 C.F.R. § 232.1(l), which criminalizes bringing a

handgun onto property belonging to the United States Postal Service); *United States v. McRobie*,

No. 08-4632, 2009 U.S. App. LEXIS 617, at *2-3 (4th Cir. 2009) (post-*Heller* decision

12

upholding as constitutional 18 U.S.C. § 922(g)(4), which criminalizes the possession of a firearm by a person committed to a mental institution).  The Court finds no reason to treat laws imposing conditions and qualifications on the commercial sale of arms, such as the ban, any differently.

Outside the list of examples of presumptively lawful limitations, neither *Heller* nor its companion case, *McDonald v. City of Chicago*, 130 S. Ct. 3020 (2010), directly addresses the buying and selling of firearms, let alone holds this to be at the "core" of the Second Amendment right.  The Fifth Circuit, however, has recognized a distinction between the right to "keep and bear arms" and "dealing in firearms" and has held that at least one statutory scheme related to dealing in firearms is not violative of the Second Amendment.  *See United States v. King*, 532 F.2d 505, 510 (5th Cir. 1976).  Although *King* was decided pre-*Heller*, its holding is likely of the nature contemplated by the Court's articulated exceptions to the Second Amendment.

The Fifth Circuit, albeit pre-*Heller*, has also recognized that young persons do not enjoy the same guarantees of the Second Amendment as do their elders of society.  In *United States v. Emerson*, the court held that the Second Amendment protects an individual right to bear arms but also noted that "felons, *infants* and those of unsound mind may be prohibited from possessing firearms."  270 F.3d 203, 261 (5th Cir. 2001) (emphasis added); *see also id.* at 227 n.21 (quoting Robert Dowlut, *The Right to Arms: Does the Constitution or the Predilection of Judges Reign?*, 36 Okla L. Rev. 65, 96 (1983) ("Colonial and English societies of the eighteenth century, as well as their modern counterparts, have excluded *infants*, idiots, lunatics, and felons [from possessing firearms].")); Stephen P. Halbrook, *What the Framers Intended*: A Linguistic Analysis of the Right to "Bear Arms", 49 Law & Contemp. Probs. 151 (1986) ("violent criminals, *children*, and those of unsound mind may be deprived of firearms . . . .") (alterations in the

13

original and emphasis added)).  The exception to the right to bear arms carved out for "infants" in *Emerson* seems to be congruent with the notion in *Heller* that conditions and qualifications on the commercial sale of arms are presumptively lawful regulatory measures.

Considering *Heller's* specific exception of conditions and qualifications on the commercial sale of arms from the individual right to keep and bear arms, along with the Fifth Circuit's treatment of the distinction between possession and dealing of firearms and its exempting young persons from Second Amendment guarantees, the Court is of the opinion that the ban does not run afoul of the Second Amendment to the Constitution.  *See United States v. Rozier*, 598 F.3d 768, 771 (11th Cir. 2010) (citing *Heller*, 128 S. Ct. at 2817) (suggesting that, under a proper reading of *Heller*, the right to bear arms is enjoyed only by those not disqualified from the exercise of the Second Amendment rights; disqualification likely includes those affected by the aforementioned presumptively lawful regulatory measures).

In essence, it is within the purview of Congress, not the courts, to weigh the relative policy considerations and to make decisions as to the age of the customer to whom those licensed by the federal government may sell handguns and handgun ammunition.  *See Ferguson v. Skrupa*, 372 U.S. 726, 729 (1963) ("Under the system of government created by our Constitution, it is up to the legislatures, not courts, to decide on the wisdom and utility of legislation.").  Therefore, with regard to the Second Amendment issue, Defendants' Motion for Summary Judgment is **GRANTED**, Defendants' Motion to Dismiss Pursuant to Rule 12(b)(6) is **DENIED** as moot, and Plaintiffs' Motion for Summary Judgment is **DENIED**.

### c.  Equal Protection

The Equal Protection Clause of the Fourteenth Amendment provides that "[n]o state shall . . . deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. amend. XIV, § 1.  Although this clause applies expressly to the states only, the Supreme Court has held that its protections are encompassed by the Due Process Clause of the Fifth Amendment and are therefore applicable to the federal government as well.  *Bolling v. Sharpe*, 347 U.S. 497, 498-99 (1954).  Plaintiffs claim that the ban violates their right to equal protection of the laws guaranteed under the Due Process Clause of the Fifth Amendment.  The focus of Plaintiffs' claim is the allegedly unequal treatment effected by the ban between 18- to 20-year-olds and those over the age of 20.

"[A]ge is not a suspect classification under the Equal Protection Clause."  *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 83 (2000).  Therefore, the government "may discriminate on the basis of age without offending the Fourteenth Amendment if the age classification in question is rationally related to a legitimate state interest."[3]  *Id.*  The Constitution permits legislators to "draw lines on the basis of age when they have a rational basis for doing so at a class-based level, even if it 'is probably not true' that those reasons are valid in the majority of cases."  *Id.* at 86.

Defendants point to evidence that Congress, in passing the ban, found "that there is a causal relationship between the easy availability of firearms other than rifles and shotguns, and juvenile and youthful criminal behavior, and that such firearms have been widely *sold by*

---

[3]Because the Court has held that Plaintiffs' claims do not raise Second Amendment concerns, their Equal Protection argument need not be evaluated based on any heightened standard of scrutiny.

15

*federally licensed importers and dealers* to emotionally immature, or thrill-bent juveniles and minors prone to criminal behavior." 1968 U.S.C.C.A.N. 2112, 2197-98 (emphasis added). In so finding, Congress passed the ban in an attempt to "increase safety and strengthen local regulation" by "[e]stablishing minimum ages of 18 for the purchase of long guns and 21 for the purchase of handguns." *Id.* at 2256.

Congress identified a legitimate state interest—public safety—and passed legislation that is rationally related to addressing that issue—the ban; thus, it acted within its constitutional powers and in accordance with the Equal Protection Clause. *See Madriz-Alvarado v. Ashcroft*, 383 F.3d 321, 332 (5th Cir. 2004) (quoting *FCC v. Beach Commc'ns*, 508 U.S. 307, 313 (1993) ("Under rational basis review, differential treatment 'must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification.'")). Therefore, with regard to the Equal Protection issue, Defendants' Motion for Summary Judgment is **GRANTED**, Defendants' Motion to Dismiss Pursuant to Rule 12(b)(6) is **DENIED** as moot, and Plaintiffs' Motion for Summary Judgment is **DENIED**.

## IV.  CONCLUSION

For the reasons stated herein,

(1)    Defendants' Motion to Dismiss Pursuant to Rule 12(b)(1) is **DENIED**;

(2)    as to the Second Amendment issue,

    (a)    Defendants' Motion for Summary Judgment is **GRANTED**,

    (b)    Defendants' Motion to Dismiss Pursuant to Rule 12(b)(6) is

        **DENIED** as moot, and

    (c)    Plaintiffs' Motion for Summary Judgment is **DENIED**; and

(3)     as to the Equal Protection issue,

    (a)     Defendants' Motion for Summary Judgment is **GRANTED**,

    (b)     Defendants' Motion to Dismiss Pursuant to Rule 12(b)(6) is

        **DENIED** as moot, and

    (c)     Plaintiffs' Motion for Summary Judgment is **DENIED**.

SO ORDERED.

Dated September 29, 2011.

SAM R. CUMMINGS
UNITED STATES DISTRICT JUDGE